1
2
3
4
5
6
7
8              **UNITED STATES DISTRICT COURT**

9              **EASTERN DISTRICT OF CALIFORNIA**

10

11   KEVIN H. SCOTT and JACQUIE L. SCOTT,    )   Case No.: 1:19-cv-0315  JLT
                                             )
12              Plaintiffs,                  )   ORDER GRANTING IN PART PLAINTIFF'S
                                             )   MOTION FOR ATTORNEY FEES AND COSTS
13        v.                                 )
                                             )   (Doc. 70)
14   JAYCO INC.,                             )
                                             )
15              Defendant.                   )
                                             )
16   _____)

17        The Scotts are California residents who purchased a new RV in Iowa. After a short time, they

18   discovered the RV suffered from various defects and required repairs.  Plaintiffs sought to hold Jayco,

19   Inc. liable for damages and injunctive relief under California's Unfair Competition Act and Consumer

20   Legal Remedies Act, and under federal law with the Magnuson-Moss Warranty Act.  The parties have

21   settled the underlying claims and agreed Jayco shall pay attorney fees and costs in an amount to be

22   determined by the Court.  (*See* Doc. 70-3.)

23        Plaintiffs now seek an award of attorney fees in the amount of $170,385.75 and costs in the

24   amount of $1,509.13.  (Doc. 71 at 15.)  Jayco opposes the motion, asserting the fees requested are

25   excessive.  (Doc. 72.)  The Court found the matter suitable for decision without oral argument, and the

26   motion was taken under submission pursuant to Local Rule 230(g). For the reasons set forth below,

27   Plaintiffs' motion is **GRANTED** in part, with fees in the modified amount of **$67,634.35** and costs in

28   the modified amount of **$400.00**.

## I.      Background

In December 2016, "Plaintiffs purchased a new 2017 Jayco Seneca RV" online through RV One Superstores.  (Doc. 1 at 4; *see also* Doc. 11-4 at 1-2.)  On December 30, 2016, Mr. Scott travelled to Des Moines, Iowa and signed the purchase contract for the RV.  (*See* Doc 11-4 at 2, ¶ 3.)  Plaintiffs assert that after purchasing the RV, they discovered it suffered from numerous defects and repeatedly sought repairs.  (Doc. 1 at 5-13.)  Plaintiffs assert the they suffered "ongoing and recurring problems with fit and finish, and a myriad of mechanical issues."  (*Id.* at 12, ¶ 23.)  According to Plaintiffs, Jayco "had multiple repair attempts on the RV, through its Dealer, and … refused and or failed to remedy, fix or remediate the serious issues."  (*Id.*, ¶ 24.)

On June 22, 2018, Plaintiff initiated this action by filing a complaint asserting the following causes of action: (1) breach of an express warranty in violation of the Song-Beverly Consumer Warranty Act;  (2) breach of an implied warranty in violation of the Song-Beverly Consumer Warranty Act; (3) unlawful, unfair, and fraudulent business practices in violation of Cal. Bus. & Prof. Code § 17200; (4) violation of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; and (5) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301.  (*See generally* Doc. 1.)  However, the parties stipulated that Plaintiffs' claims under the Song-Beverly Act be dismissed with prejudice on September 10, 2021.  (Doc. 10.)

On July 15, 2021, the parties informed the Court that they had reached a settlement in the action.  (Doc. 64.)  They agreed on the substantive settlement terms, including that Plaintiffs would file a motion for fees and costs, which they have now done (Docs. 70, 71.)

## II.      Legal Standards

In general, "[t]he starting point for determining a reasonable fee is the 'lodestar' figure, which is the number of hours reasonably expended multiplied by a reasonable hourly rate."  *Gates v. Deukmejian*, 987 F.2d 1390 (9th Cir. 1992); *see also Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008); *Laffitte v. Robert Half Int'l Inc*., 1 Cal. 5th 480, 489 (2016) (a lodestar involves "multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate").

When the parties are unable to "settle the amount of a fee," "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly

rates." *Hensley v. Eckerhart*, 461 U.S. at 424, 437 (1983).  Thus, the burden of proof is on fee applicants. *Id.*; *see also Welch v. Metropolitan Life Ins. Co*., 480 F.3d 942, 945-46 (9th Cir. 2007).  Any party opposing the fee request must make specific objections to the hours expended. *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1993); *see also Premier Med. Mgmt. Sys. v. Cal. Ins. Guarantee Assoc.*, 163 Cal. App. 4th at 550, 564 (2008) ("[g]eneral arguments that fees claimed are excessive, duplicative, or unrelated do not suffice").  Thus, the burden shifts to opposing party to demonstrate the hours spent are duplicative or excessive.  *See id.; see also Gorman v. Tassajara Dev. Corp.*, 178 Cal. App. 4th 44, 101 (2009) ("[t]he party opposing the fee award can be expected to identify the particular charges it considers objectionable").

Courts are given discretion when calculating a fee award. *Hensley,* 416 U.S. at 437.  However, the Supreme Court explained "it remains important ... for the district court to provide a concise but clear explanation of its reasons for the fee award." *Id*.  Thus, the Court should provide sufficient information on how it arrived at the total of compensable hours for which fees were awarded to allow for meaningful appellate review. *Cunningham v. County of Los Angeles*, 879 F.2d 481, 485 (9th Cir. 1988) ("Courts need not attempt to portray the discretionary analyses that leads to their numerical conclusions as elaborate mathematical equations, but they must provide sufficient insight into their exercises of discretion to enable [the appellate court] to discharge our reviewing function").

**III.    Discussion and Analysis**

Pursuant to the terms of the settlement agreement, "Jayco agrees to pay Plaintiff's (sic) attorney's fees and costs in an amount to be determined by the Court, by way of noticed motion, to have been reasonably incurred by Plaintiffs in the commencement and prosecution of this action." (Doc. 70-3 at 6, ¶ 1(b), emphasis omitted.)  Thus, there is no dispute that Plaintiffs are entitled to fees in the action.  Rather, Jayco challenges the number of hours "reasonably incurred" and the hourly rates sought by counsel and the administrative professionals.  (*See generally* Doc. 72.)

Plaintiffs seek an award of "$106,090.55 in fees, plus an additional $7,5000 for bringing this Motion, reviewing Jayco's Opposition to Plaintiffs' Motion, drafting Plaintiffs' Reply, preparing and attending any relating hearing, preparing any needed filings to satisfy the order, for time to wrap up the settlement and ultimately collect any amount awarded by this Court." (Doc. 71 at 6.)  Plaintiffs request

3

multiplier to enhance the lodestar in the amount of 1.5, for the total amount of $170,385.75.  (*Id.* at 6, 15.)  Finally, Plaintiffs seek costs and expenses in the amount of $1,509.13.  (*Id.*)

### A.    Hours expended

A fee applicant must provide records documenting the tasks completed and the amount of time spent.  *Hensley,* 461 U.S. at 424 (1983); *see also Ketchum v. Moses*, 24 Cal.4th 1122, 1132 (2001) (party must provide records sufficient for the court to "carefully review … [the]  hours expended" to determine whether the time reported was reasonable).  "Where the documentation of hours in inadequate, the district court may reduce hours accordingly."  *Hensley*, 461 U.S. at 433; *see also Ketchum*, 24 Cal.4th at 1131-32.

Plaintiffs seek fees for 270.3 hours of work in the action, plus anticipated time for future work on this motion.[1]  (Doc. 70-1 at 12-13; Doc. 71 at 7-8, 15.)  This time includes work by attorneys Jon Jacobs, Terry Baker, Chad David, Rene Dupart, Jon Feeley, Elana Midda, and Nicolas, Dillavou; as well as paralegals Lisa Tyler, Gabriela Torres, Kimberly Riley, Kayla Goettman, Cindy Lewandowski, and Shaina Cateldge.  (*Id*.)  Jayco contends the time reported reflects overstaffing of the work with "transient timekeepers."  (Doc. 72 at 3, 7-9.)  In addition, Jayco objects the hours reported includes "numerous clerical entries, which should be considered as overhead" and "impossibly vague billing entries" that should be excluded from the fee award.  (*Id.* at 3-4, 9-12.)  Finally, Jayco argues the time sheets reflect overbilling with tasks that should not take six minutes to complete.  (*Id.* at 12.)

### 1.    Exhibits in opposition

Jayco enlisted James Schratz to "provide an audit and opinion regarding the reasonableness of the attorneys' fees requested" by Plaintiffs.  (*See* Doc. 72-1 at 1, ¶ 1.)  According to Mr. Schratz, he "reviewed Plaintiffs' Fee Motion and accompanying declarations and exhibits in support thereof, including billing records covering the time period from February 9, 2018 through August 27, 2021," as well as "various pleading and written discovery provided by Jayco, Inc.'s counsel."  (*Id.* at 14, ¶ 46.)  Based upon his review, Jayco compiled billing entries that were challenged for overstaffing with

---

[1] Although the table in the motion indicates a total of 230.7 hours, this appears to be a clerical error.  (*See* Doc. 71 at 8.)  Rather, Mr. Jacobs reports: "The Law Offices of Jon Jacobs has spent 230.7 hours on this matter."  (*See* Doc. 70-5 at 4.)  In addition, Mr. Baker billed 39.6 hours prior to joining as co-counsel with the firm of Mr. Jacobs.  (*See id.*; Doc. 70-4 at 7-8.)  These hours are reflected in the billing records and the table in the motion, and when combined total 270.3 hours.

"transient timekeepers" in "Exhibit 8," clerical tasks in "Exhibit 11," and vague billing entries in "Exhibit 12."

Significantly, whether fees should be awarded—and the reasonableness of the fees requested—are matters of law for the Court to decide. *See Hensley,* 416 U.S. at 437. Thus, the Court declines to simply adopt the opinions of Mr. Schratz related to the reasonableness of the fees requested by Plaintiffs' counsel. The Court has reviewed each exhibit, as discussed below, and used the exhibits to identify the more than 400 billing entries challenged by Jayco in support of the assertion that the hours billed by Plaintiffs' counsel should be reduced for overstaffing, clerical tasks, and vagueness.[2]

### 2.   Overstaffing

Jayco observes that while Plaintiffs' counsel "professes expertise in consumer warrant law," the firm "collectively staffed this matter with 13 different timekeepers consisting of 7 attorneys and 6 paralegals." (Doc. 72 at 7.) Jayco contends "at least 9 of the 13 timekeepers are transient or excessive timekeepers that each billed less than 20 hours for the entire case," for which Plaintiffs requested fees in the amount of $15,569.50. (*Id.*) In addition, Jayco observes that six individuals "billed less than 3 hours, with 3 of those timekeepers billing less than a half hour total." (*Id.*) Jayco compiled the challenged billing entries for these individuals in "Exhibit 8." (*See id.* at 8; Doc. 72-3 at 125-129.)

According to Jayco, "in staffing cases, counsel is required to exercise 'billing judgment', which means exercising judgment to adjust or write down fees and/or expenses incurred when the fees would be excessive, duplicative, or unnecessary." (Doc. 72 at 8, citing *Hensley v. Eckerhart*, 103 S.Ct. 1933 (1983).) Jayco notes the Supreme Court explained:

> Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here."

(*Id.* at 8-9, quoting *Hensley, 103* S.Ct. at 1939-40.) Based upon the limited tasks performed, Jayco

---

[2] Due to the significant number of entries challenged, the Court declines to list each and every billing entry challenged by Jayco in its exhibits. However, the Court categorized the billing entries below, to identify which categories of tasks were not compensable—particularly with clerical tasks— and which of the challenged entries are not stricken from the fee award.

1   contends the time of attorneys Jon Jacobs, Elena Midda, Rene Dupart, Jon Feely, and Nicolas Dillavou

2   should be deducted from the fee award.  (*Id.* at 7-8.)  For the same reason, Jayco contends the Court

3   should deduct the time of the following administrative professionals: Gabriela Torres, Kimberly Riley,

4   Cindy Lewandowski, and Shaina Cateldge.  (*Id.*)

5          Plaintiffs contend the number of timekeepers on the action "would only be relevant had the

6   billing been duplicative with multiple timekeepers performing the same task."  (Doc. 73 at 2.)

7   According to Plaintiffs, "[t]he Law Offices of Jon Jacobs was retained by Plaintiffs in March of 2018,

8   and multiple attorneys and paralegals left the law firm over the course of this case."  (*Id.*)  Plaintiffs

9   explain: "During the pendency of the lawsuit, timekeeper Rene Dupart, Jon Feely, Shaina Catley,

10  Kimberly Riley, Gabriela Torres, and Elana Midda all left the law firm."  (*Id.* at 5.)  Plaintiffs argue

11  that a review of the billing records indicates "it is clear that the case was primarily handled by attorneys

12  Rene Dupart and Terry Baker, then Chad David and Terry Baker upon Mr. Dupart's departure from the

13  law firm."  (*Id.* at 3.)  Further, Plaintiffs assert: "There was not one billing entry related to any attorney

14  catching up on the facts of the case or performing duplicative tasks."  (*Id.* at 2-3.)

15         Importantly, the Ninth Circuit has "recognized that 'the participation of more than one attorney

16  does not necessarily constitute an unnecessary duplication of effort.'"  *McGrath v. County of Nevada*,

17  67 F.3d 248, 256 (1995) (quoting *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989)).  The

18  Ninth Circuit recently determined a district court erred in striking all hours billed by several attorneys

19  on the grounds that "the case was overstaffed."  *Fernandez v. Torres*, 2021 U.S. App. LEXIS 30145 at

20  *1-2, 2021 WL 4690940, at *1 (9th Cir. Oct. 7, 2021).  In *Fernandez*, five attorneys billed for work on

21  an action, and the district court "ignored the time billed by three of Fernandez's five attorneys."  *Id.*

22  The Ninth Circuit concluded "[t]he district court abused its discretion," because the identified attorneys

23  "performed at least <u>some</u> necessary work, such as drafting a joint Rule 26 report and a settlement

24  agreement."  *Id.* (emphasis in original).  The Ninth Circuit explained: "To the extent that overstaffing

25  resulted in inefficiencies, the district court should reduce the fee award in proportion to those

26  inefficiencies, rather than through a 'shortcut'" in striking all actions. *Id.*, citing *Moreno v. City of

27  Sacramento,* 534 F.3d 1106, 1113 (9th Cir. 2008).

28         As in *Fernandez*, the number of attorneys on the action suggests that the firm overstaffed the

matter.  However, the Court declines to strike time billed on these grounds.  *See Fernandez*,  2021 U.S. App. LEXIS 30145 at *1-2, 2021 WL 4690940, at *1.  Rather, the Court will review the challenged billing records in "Exhibit 8" to determine whether "overstaffing resulted in inefficiencies," and whether unnecessary time or duplicative tasks were included in the billing records.

### a.      Time reported by Jon Jacobs

Notably, contrary to Plaintiffs' assertion, challenged entries from Jon Jacobs indicate an effort to "catch[] up on the facts of the case."  Mr. Jacobs was the first to review the action on March 2, 2018, when he conducted an "intake review."  (Doc. 70-5 at 43.)  He then billed for further review and assigning the case on March 9, 2018.  (*Id.*)  Presumably, review had to occur for his law firm to determine whether to take the action and identify the attorney(s) who would work on the action.  Thus, the Court declines to strike these hours.  However, the billing records do not include any other entries from Mr. Jacobs for more than three years.  (*See id.* at 9-43.)

On July 14, 2021, Mr. Jacobs billed 0.4 hours for reviewing the file to determine the authorized amount and determine where the sales contract was signed.  (Doc. 70-5 at 9.)  If Mr. Jacobs worked on the action consistently, it would not be necessary to review the file to determine where the contract was signed.  (*See* Doc. 11-4 at 2; Doc. 19 at 1-2.)  Further, Chad David drafted a confidential settlement conference statement a week before—which was provided to the Court on July 9, 2021—and the parties were already actively engaged in settlement discussions when Mr. Jacobs reviewed the file. (*See id.* at 9-10.)  Thus, Mr. Jacobs' file review on July 14, 2021 was unnecessary to the action, and 0.4 hour will be deducted from his time.

Finally, Mr. Jacobs billed 0.2 hour for his review of the file in advance of preparing the fees motion and a memo on August 16, 2021.  (Doc. 70-5 at 7.)  Importantly, the record indicates that Mr. Jacobs was involved with the preparation of the motion for fees now pending before the Court, as he executed a declaration in support of the motion.  (*Id.* at 1-5.)  Therefore, the Court is unable to find this review related to the motion for fees was unnecessary, and declines to deduct this challenged time.

### b.      Time billed by Jon Feely

Jayco objects to the 0.2 hour billed by Jon Feely in this action. (Doc. 72 at 7.)  Mr. Feely billed the 0.20 hour for "Choice of Law" on May 14, 2019.  (Doc. 70-5 at 32.)  Curiously, this entry is the

*only* one for Mr. Feeley, and the only work entered for the entirety of the month of May 2019.  (*See id.* at 31-32.)  Further, Terry Baker began to research the "choice of law" issue—or "controlling law," as counsel used the terms interchangeably in the billing records—in February 2019.  (Doc. 70-4 at 7; *see also* Doc. 70-5 at 21-24.)  Mr. Baker continued to research the issue, prepared the motion to establish controlling law, reviewed the opposition, prepared the reply brief, attended the hearing, and communicated with the client regarding the Court's ruling.  (Doc. 70-5 at 21-24.)  In total, Mr. Baker billed approximately 36 hours related to that motion, through March 2020.  (*See id.*; Doc. 70-4 at 7.)  Because there is no indication in the billing records that Mr. Feely offered any assistance to Mr. Baker with the preparation of the motion—particularly where Mr. Baker did not bill for any work on the issue between February 2019 and January 2020—it appears work by Mr. Feely was duplicative of the efforts of Mr. Baker.  Therefore, the 0.2 hour will be deducted from the fee award.

*c.*     *Time billed by Nicolas Dillavou*

On June 22, 2021, Mr. Dillavou billed 0.3 hour for a "[p]hone call with [Chad David] re status of case, settlement, and next steps."  (Doc. 70-5 at 14.)  Jayco asserts this time should not be awarded, noting it was the only work completed by Mr. Dillavou on the action.  (Doc. 72 at 7; *see also* Doc. 72-3 at 128.)

Notably, Mr. David also billed 0.3 hour for a call with Mr. Dillavou "re legal strategy" on June 22, 2021.  (Doc. 70-5 at 14.)  In general, two attorneys cannot bill for communicating with each other, as such time is duplicative and unnecessary.  *In re Mullins*, 84 F.3d 459, 467, 318 U.S. App. D.C. 19 (D.C. Cir. 1996); *Robinson v. Plourde*, 717 F. Supp. 2d 1092, 1099 (D. Haw. 2010).  As this Court previously observed, "many courts ... reduced fee awards for time spent in 'interoffice conferences' or other internal communications." *Gauchat-Hargis v. Forest River, Inc.*, 2013 WL 4828594 at *3 (E.D. Cal. Sept. 9, 2013) citing, *e.g., Mogck v. Unum Life Ins. Co. of Am.*, 289 F.Supp.2d 1181, 1194 (S.D. Cal. 2003); *see also United States v. One 2008 Toyota Rav 4 Sports Util. Vehicle,* 2012 WL 5272281 at *9 (C.D. Cal. Oct. 18, 2012) ("[w]hen attorneys hold a telephone or personal conference, good 'billing judgment' mandates that only one attorney should bill that conference to the client, not both attorneys" [citation omitted]); *Coles v. City of Oakland*, 2007 WL 39304, at *10 (N.D. Cal. Jan. 4, 2007) (observing that billing for communications between attorneys may be a sign of overstaffing, warranting

a reduction in hours billed).  Because Mr. David has billed for the same conference, the Court finds the billing by Mr. Dillavou was duplicative and unnecessary.  Therefore, the 0.3 hour will be deducted from the Court's lodestar calculation.

### d.  Time billed by Elena Midda

On March 13, 2018, Ms. Midda billed 2.0 hours for her review of the initial file documents and preparation of a notice and demand.  (Doc. 70-5 at 43.)  On March 21, 2018, she billed for her review of Jayco's response.  (*Id.*)  Jayco object to the entries from Ms. Midda, asserting she is a "transient timekeeper" and the 2.2 hours she billed for these tasks should not be included in the fee award.  (Doc. 72 at 7-8; Doc. 72-3 at 126.)

Notably, the billing records indicate that while the action was originally assigned by the firm to Ms. Midda for work, the assignment changed to Rene Dupart in May 2018.  (*Id.* at 43.)  Plaintiffs also report Ms. Midda left the firm during the pendency of this action, although it is unclear when her departure occurred.  (*See* Doc. 73 at 5.)  Jayco does not assert the work performed by Ms. Midda prior to the reassignment or her departure was not relevant or unnecessary to the matter.  (*See* Doc. 72 at 7-9.)  Further, there is no indication her work was duplicative of other attorneys.  Accordingly, the Court declines to deduct the challenged time for Ms. Midda from the lodestar.

### e.  Time billed by Rene Dupart

Jayco contends Plaintiffs should not receive any fees for the time billed by Mr. Dupart.  (Doc. 72 at 7-9.)  Again, however, Jayco does not address the substance of the work performed by the attorney.  (*Id.*)  Mr. Dupart billed 19.7 hours for tasks that included: communicating with Plaintiffs and opposing counsel; drafting the complaint (Doc. 1) drafting the Joint Scheduling Report filed on September 13, 2018 (Doc. 8); attending the conference via telephone on September 20, 2018; and drafting the opposition to the motion to change venue filed October 18, 2018 (Doc. 16).  (*See* Doc. 70-5 at 35-43; *see also* Doc. 72-3 at 128.)  It is indisputable that such tasks were necessary and relevant to the litigation.  Because no other attorney billed for drafting the identified pleadings, it does not appear there was duplicative billing to warrant a deduction.  Consequently, the Court declines Jayco's request to strike the 19.7 hours billed by Mr. Dupart from the fee award.

///

### f. Challenged time billed by paralegals

On the grounds that several paralegals were also "transient timekeepers," Jayco objects to the 12.8 hours billed by Gabriela Torres, the 5.4 hours billed by Kimberly Riley, the 0.2 hour billed by Cindy Lewandowski, and the 2.4 hours billed by Shaina Cateldge.  (Doc. 72 at 7-9.)  Review of the records for each of the individuals does not reveal duplicative tasks.  Therefore, the Court declines to deduct this time based upon Jayco's objection to "the high number" of individuals who worked on the action and limited number of tasks completed.  *See Fernandez*, 2021 U.S. App. LEXIS 30145 at *1-2, 2021 WL 4690940, at *1.  Review of the records for each of the individuals does not reveal any duplicative efforts among the paralegals. To the extent Jayco also argues to the time billed by Gabriela Torres and Kimberley Riley should not be awarded because the tasks performed were clerical in nature (Doc. 72 at 8), such objections are addressed below.

### 3. Clerical tasks

The Supreme Court determined that "purely clerical or secretarial tasks should not be billed at a paralegal or [lawyer's] rate, regardless of who performs them."  *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989).  As a result, courts have approved of elimination of clerical tasks from fee awards.  *See, e.g.*, *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009); *see also Marquez v. Harper Sch. Dist.*, 546 F. App'x 659, 660 (9th Cir. 2013) ("[t]he district court was within its discretion" when it declined to award fees for clerical tasks); *Harris v. L & L Wings, Inc.*, 132 F.3d 978, 985 (4th Cir. 1997) (approving the deduction of hours spent on secretarial tasks from the lodestar calculation). Such tasks may include: "creating indexes for a binder; filing emails, memoranda, and other correspondence; updating the case calendar with new dates; copying, scanning, and faxing documents; and filing or serving documents."  *Moore v. Chase, Inc.*, 2016 (E.D. Cal. July 7, 2016), citing *Prison Legal News v. Schwarzenegger*, 561 F.Supp.2d 1095, 1102 (N.D. Cal. 2008).

Jayco argues counsel billed more than 60 hours in "clerical tasks such as uploading and saving documents, calendaring, intra-office coordinating and scheduling, and e-filing documents," and prepared "Exhibit 11" as table of 256 challenged billing entries.[3]  (Doc. 72 at 10; Doc. 72-3 at 153-67.)

---

[3] Again, the Court relies on the exhibit only to determine the challenged entries, which were then identified in Plaintiffs' original billing records.

In addition, Jayco asserts paralegals it previously identified as "transient timekeepers" performed clerical tasks.  (*Id.* at 8-9.)  Specifically, Jayco contends that "Gabriel[a] Torres billed a total of 12.8 hours consisting of 14 entries for clerical work with the most hours billed in round numbers (2 entries for 2 hours and 1 entry for 6 hours) totaling 10 hours for reviewing the file and preparing discovery shells."  (*Id.*)  Jayco also asserts, "Kimberly Riley billed a total of 5.4 hours consisting of 22 entries for clerical work such as calendaring, uploading documents, and client communication."  (*Id.*)

In reply, Plaintiffs argue "many of the indicated billing entries offered by Defendant as Exhibit 11 of their Opposition do not fall under clerical tasks."  (Doc. 73 at 5.)  According to Plaintiffs, "A review of the billing entries show that many of the tasks complained of are fully recoverable."  (*Id.*)  However, Plaintiffs do not offer the Court any assistance by identifying which billed tasks they believe to be "fully recoverable," or which tasks Plaintiffs indirectly concede are not recoverable.  (*See id.*)

### a.  Updating and reviewing the firm's file

Previously, this Court determined that organizing and updating files appeared to be clerical work.  *L.H. v. Schwarzenegger*, 645 F. Supp. 2d 888, 899 (E.D. Cal. 2009).  Thus, the Court declined to award fees where the applicant "tendered no evidence that these are tasks that required the skill of a paralegal."  *Id.*  Approximately 30 billing entries challenged by Jayco as clerical involve updates and reviews of the firm's file by Kimberly Riley, Gabriela Torres, Lisa Tyler, and Kayla Goettman.  (*See, e.g.,* Doc. 72-3 at 127-28, 157-59, 161-63, 165-66.)

For example, Ms. Tyler billed 0.2 hours to indicate in the system that the "attorney assignment [changed]" from Rene Dupart to Elana Midda on May 25, 2018; and billed an additional 0.2 hour to indicate the attorney assignment changed back to Mr. Dupart on May 31, 2018.  (Doc. 70-5 at 43.)  Ms. Tyler billed 2.8 hours for updates to the firm's file that included, but were not limited to: meeting dates; tasks for the deadline sheet; and information concerning the parties, assigned judges, and contact information of opposing counsel "for easy access."  (*See id.* at 8, 31.)  Likewise, Ms. Goettman billed 0.8 hour for updates with party information, "case details," and "case numbers" for the Eastern District of California and Northern District of Indiana.  (*See, e.g. id.* at 33, 36, 41-42.)  Ms. Goettman also billed 0.8 hour for reviewing the file to confirm the "case is in [the] Eastern District," document filing, and the prior demand for a jury trial.  (*Id.* at 20-21.)  Similarly, Ms. Riley billed 0.9 hour for file

11

review in an effort to locate a letter, which she was unable to find.  (Doc. 70-5 at 25.)  Ms. Riley also billed 0.4 hour to upload documents to the file such as an email from Plaintiffs and a "conformed copy of stipulation."  (*Id.* at 25-26.)  Ms. Torres billed 1.3 hours for file updates that were requested when Mr. David and Ms. Tyler were away from the office, reviewing the file, and organizing documents. (*Id.* at 22-23, 27-28, 31.)

Plaintiffs do not argue these file updates or reviews "required the skill of a paralegal," or present any evidence that would support such a conclusion.  Based upon the Court's review of the challenged records, 7.8 hours will be deducted from the lodestar, which includes 3.6 hours for Lisa Tyler, 1.6 hours for Kayla Goettman, 1.3 hours for Kimberly Riley, and 1.3 hours for Gabriela Torres.

*b.     Document retrieval and saving*

Courts have declined to award fees for "retrieving electronic court documents or copying" due to the clerical nature of the tasks.  *Jones v. Metropolitan Life Ins. Co.*, 845 F. Supp. 2d 1016, 1027 (N.D. Cal. 2012); *Schmidt v. City of Modesto*, 2018 WL 6593362, at *9 (E.D. Cal. Dec. 18, 2018) (indicating clerical work included downloading, saving, and printing documents); *T.B. v. San Diego Unified Sch. Dist.*, 2017 U.S. Dist. LEXIS 218434, at *97 (S.D. Cal. Oct 2, 2017) ("scanning and saving" documents is clerical work).  Thus, to the extent the billing records include such tasks, fees for such tasks should not be awarded.

As Jayco argues, the billing records from Plaintiffs' counsel include many entries related to document retrieval from the docket, printing copies, and saving numerous documents to the firm's file. For example, Kayla Goettman billed 0.2 hour to "[d]ownload/retrieve Docket No. 2 [the Summons]; upload to case file" and another 0.2 hour to "[d]ownload/retrieve Docket No. 3 [the New Case Documents]; upload to case file" on June 22, 2018.  (Doc. 70-6 at 42; Doc. 72-3 at 154.)  On June 28, 2018, Ms. Gotteman billed 0.2 hour to scan a copy of the complaint with supporting documents and "upload to the case file."  (*Id.* at 41.)  On July 17, 2018, she billed 0.2 hour to "Retrieve Docket No. 4; upload to the case file."  (*Id.* at 43.)  Similarly, in October 2018, Lisa Tyler billed 0.4 hour to upload and save Documents 14 and 15.  (*Id.* at 37.)  Ms. Tyler also billed 0.3 hour to print documents for Rene Dupart and "put [them] on his chair" with a "pad, pen and business cards" prior to a hearing. (*Id.* at 35.)  Ms. Riley also billed for 0.4 saving documents to the firm's file, such a copy of the signed

12

1   mediation agreement. (*Id.* at 27.)

2   Though these are only a handful of examples, throughout the duration of the action, paralegals

3   billed for document retrieval from the Court's docket and save copies, with more than 30 billing

4   entries for document retrieval and uploading to the firm's file.  (*See generally* Doc. 70-5 at 5-43; *see*

5   *also* Doc. 72-3 at 154-167.)  However, tasks such as saving, scanning, and printing documents should

6   be included in the firm's overhead, and fees will not be awarded.  *Jones*, 845 F. Supp. 2d at 1027.

7   Accordingly, based upon the Court's review of the billing records, 8.4 hours will be deducted from the

8   requested fee award, which includes 4.4 hours for Lisa Tyler, 3.6 hours for Kayla Goettman, and 0.4

9   hour for Kimberly Riley.

10                          c.      *Document finalizing and filing*

11   "Finalizing" a document generally refers to the preparation of documents for filing and service

12   after an attorney has drafted the document.  Courts throughout the Ninth Circuit determined the

13   "finalizing" of a document is a clerical task for which fees should not be awarded.  *See, e.g.*, *Moores v.*

14   *Berryhill*, 2017 WL 4386050, at *3 (E.D. Cal. Oct. 3, 2017) (declining to award fees for finalizing a

15   complaint as clerical work); *United States v. Haw. Student Suites*, 2021 WL 3134925, at *10 (D. Haw.

16   May 28, 2021) ("Finalizing a document" is a "clerical task[]" for which time is not compensable);

17   *Velu v. Aristotle Air Conditioning & Heating, LLC*, 2021 WL 4122297, at *2 (D. Az. Sept. 9, 2021);

18   (declining to include time billed for finalizing and filing a document in the court's calculation of fees).

19   Further, the Ninth Circuit indicated "filing, transcript, and document organization time was

20   clerical in nature and should have been subsumed in firm overhead."  *See Nadarajah*, 569 F.3d at 921.

21   *see also Garcia v. Colvin*, 2013 WL 5347494, at *7 (E.D. Cal. Sept. 23, 2013) (observing the

22   "document emailing and e-filing constitutes clerical or secretarial work and should not be awarded as

23   these activities should be considered overhead costs," and explaining "filing documents is a clerical

24   task, regardless of whether counsel has delegated the authority to his paralegal to access his CM/ECF

25   account"); *United States v. One 2008 Toyota Rav 4 Sports Utility Vehicle*, 2012 WL 5272281, at *12

26   (C.D. Cal. Oct. 18, 2012) (declining to award fees for time spent e-filing documents with the court).

27   As indicated by Jayco in "Exhibit 11," the billing records include many entries for finalizing

28   documents and e-filing with the Court.  For example, Kayla Gottman billed 0.8 hour for e-filing the

Summons, and finalizing and e-filing the Joint Scheduling Report.  (Doc. 70-5 at 39-40; Doc. 72-3 at 154-55.)  Lisa Tyler billed 0.9 hour to related to finalizing the complaint and coversheet, e-filing, and upload the documents to the firm's case file.  (Doc. 70-5 at 42; Doc. 72-3 at 154.)  Additionally, Ms. Tyler billed for finalizing and e-filing other documents including, but not limited to, a stipulation to dismiss, the motion regarding controlling law, and a notice of appearance.  (*See, e.g.* Doc. 70-5 at 15, 38.)  For example, she billed 1.1 to talk to Mr. Baker about what needed to be done to finalize the documents for the motion controlling law and then "made [the documents] pretty for filing."  (*Id.* at 24.)  Therefore, based upon the Court's review of the challenged billing records and the entries for "finalizing" and e-filing documents, 3.2 hours will be deducted from the lodestar calculation, which includes 0.8 hour for Kayla Goettman and 2.4 hours for Lisa Tyler.

### d. Document revision by paralegals

In several billing entries challenged by Jayco, Lisa Tyler billed for reviewing and revising documents previously drafted by attorneys prior to saving the document to the firm's system or e-filing with the Court.  For example, after attorney Rene Dupart spent 4.0 hours drafting the complaint in the action, Ms. Tyler billed 0.5 hour for the following: "[r]eview revise complaint, and uploaded and saved to Merus."  (Doc. 70-5 at 43; *see also* Doc. 72-3 at 154.)  After Mr. Dupart spent 1.0 hour drafting a stipulation to dismiss on September 24, 2018, Ms. Tyler billed 0.2 hour to "[r]eview revise stip to dismiss" and upload the document to the system. (*Id.* at 38; *see also* Doc. 72-3 at 156.) Again, in October 2018, Mr. Dupart spent 10 hours drafting the opposition to the motion to change venue after which Ms. Tyler billed 0.8 hour for the following: "Review revise oppo. Review court's website for judge's info. Prepared GOS label for delivery of judge's copy. Uploaded and saved docs to merus. Uploaded and saved conformed copy."  (*Id.* at 37; Doc. 72-3 at 157.)  Similarly, after Mr. Baker worked more than 15.00 hours on a reply to the motion to establish controlling law and supporting documents, Ms. Tyler billed 1.3 hours to: "Review revise finalize Reply to oppo, TB decl and RJN. Uploaded/saved docs to file. Updated calendar. Efiled with the court. Uploaded and saved conformed copies to file."  (*See* Doc. 70-5 at 22-23; Doc 72-3 at 161.)

To the extent Ms. Tyler reviewed and revised documents, her work was duplicative of the efforts performed by attorneys on the complaint, stipulation, opposition to the motion, and reply to the

motion.  In addition, courts have determined proofreading is clerical when the review of work completed by counsel.  Further, it is indisputable that the tasks identified in the billing entries— including uploading documents, preparation of mailing labels, calendaring, and e-filing— are clerical tasks that should not be included in the lodestar calculation, as they do not require the skill of a paralegal.  *See, e.g., Nadarajah*, 569 F.3d at 921; *Smith v. A Check Am.*, 2017 U.S. Dist. LEXIS 143717, at *26 (C.D. Cal. July 18, 2017) (identifying "proofreading, making copies, uploading data to a server, formatting documents, and managing databases" as clerical tasks); *Garcia*, 2013 WL 5347494, at *7.  Therefore, 2.8 hours will be deducted from the requested fee award for Ms. Tyler.

<em>e.</em>      <em>Calendaring</em>

Repeatedly, this Court and others in the Ninth Circuit indicated calendaring deadlines is a clerical task that should not being included in a fee award.  *See, e.g., Hill v. Comm'r of Soc. Sec.*, 428 F. Supp. 3d 253, 265 (E.D. Cal. 2019) (observing clerical staff could "easily" complete "calendaring of court dates" and reducing the fee award); *Campbell v. AMTRAK*, 718 F.Supp.2d 1093, 1105 (N.D. Cal. 2010) (deducting calendaring as clerical work from the awarded fees); *Doran v. Vicorp Rests., Inc.*, 407 F.Supp.2d 1120, 1125 (C.D. Cal. 2005) (noting "calendaring court dates" is clerical and reducing the fee award); *T.B.*, 2017 U.S. Dist. LEXIS 218434, at *97 ("calendaring [an] event is clerical").

As Jayco indicated in its exhibit of challenged billing, Kayla Goettman and Lisa Tyler billed for calendaring deadlines and their review of documents for calendaring.  (*See generally* Doc. 72-3 at 154- 56, 158-64, 166-67.)  For example, after the Court issued the new case documents on June 22, 2018 (Doc. 3), Ms. Goettman billed 0.3 hour to review and add the scheduling conference and joint scheduling report deadlines to the firm's calendar.  (Doc. 70-5 at 42.)  The following week, Ms. Tyler billed 0.2 hour for calendaring the deadline for Jayco's answer.  (*Id.* at 41.)  On August 22, 2018, Ms. Goettsman billed 0.3 hour to again "Review Docket No. 3; update calendar."  (*Id.*)  The following month, she billed 0.4 hour to update the firm's calendar with the initial disclosure due date and the scheduling conference date.  (*Id.* at 39.)  On April 3, 2019, Ms. Gottesman billed 0.4 hour for calendaring discovery deadlines—before the Court issued its scheduling order—and proposed dates in the firm's calendar.  (*Id.* at 32.)  Once the order was issued on April 9, 2019 (Doc. 45), Ms. Gottesman billed another 1.0 hour for calendaring the deadlines ordered by the Court.  (*Id.*)  In November 2019,

15

1    Kimberly Riley billed for calendaring the deposition dates, and Ms. Gotteman billed for updating the

2    calendar with amended dates.  (*Id.* at 26.)

3          In total, there are more than 35 challenged entries related to calendaring or updating dates—

4    such a discovery deadlines, the date of the vehicle inspection, deposition dates, or other unidentified

5    events—and the paralegals billed a minimum of 0.2 hour for the task each time.  (*See, e.g.,* Doc. 70-5

6    at 16-17, 22-23, 27-28, 32-33, 37-39, 42-42.)  Because the tasks are clearly clerical, the time will be

7    deducted from the lodestar calculation.  *See Hill*, 428 F.Supp.3d at 265; *Campbell*, 718 F.Supp.2d at

8    1105.  Based upon the Court's review of the billing entries related to calendaring, 9.2 hours will be

9    deducted from the lodestar calculation, which includes 5.1 hours for Kayla Goettman, 3.9 hours for

10   Lisa Tyler, and 0.2 Hour for Kimberly Riley.

11                    *f.*       *Clerical internal communications*

12         Billing entries challenged by Jayco include communications within the firm, whether to another

13   paralegal or to counsel.  (*See generally* Doc. 72-3 at 154-167.)  Courts decline to award fees for staff

14   emailing documents.  *See Schmidt v. City of Modesto*, 2018 WL 6593362, at *9 (E.D. Cal. Dec. 18,

15   2018) (declining to award fees for emailing documents, noting emailing was a clerical task rather than a

16   paralegal task); *LaToya A. v. S.F. Unified Sch. Dis*t., 2016 WL 344558, at *9 (N.D. Cal. Jan. 28, 2016)

17   (forwarding documents to attorneys is "purely clerical work").  In addition, courts have disapproved of

18   two individuals billing for communicating with each other, as such time is duplicative and unnecessary.

19   *In re Mullins*, 84 F.3d 459, 467 (D.C. Cir. 1996); *Robinson v. Plourde*, 717 F. Supp. 2d 1092, 1099 (D.

20   Haw. 2010).  Consequently, "many courts have ... reduced fee awards for time spent in 'interoffice

21   conferences' or other internal communications." *Gauchat-Hargis v. Forest River, Inc*., 2013 WL

22   4828594 at *3 (E.D. Cal. Sept. 9, 2013), citing *Mogck v. Unum Life Ins. Co. of Am*., 289 F.Supp.2d

23   1181, 1194 (S.D. Cal. 2003) (reducing the fee award where the attorneys "billed an inordinate amount

24   of time for interoffice conferences").

25         In "Exhibit 8" and "Exhibit 11," Jayco objects to more than 80 entries—each billed for a

26   minimum of 0.2 hour—related to emails, chats, and telephone conferences between the paralegals and

27   counsel.  (*See generally* Doc. 72-3 at 154-67.)  Again, though the Court declines to identify each of the

28   internal communications given the significant number, challenged entries related to forwarding emails

16

or documents to others working on the action.  (*See, e.g., id.* at 154, 155, 157, 158, 165, 167.)  For example, Ms. Tyler billed for forwarding emails on April 11, 2020; September 22, 2020; November 3, 2020; and July 9, 2021. (*See, e.g.,* Doc. 70-5 at 10, 18, 21.)  Shaina Cateldge billed 0.2 for forwarding documents to others, including Ms. Tyler.  (*Id.* at 32.)  In addition, Ms. Goettman and Ms. Tyler billed for emailing documents and attachments including, but not limited to: the executed summons, a draft of the initial disclosures, the joint discovery plan, the court's conference notice, an invoice from JAMS, court orders, and settlement breakdown.  (*See, e.g.,* Doc. 70-5 at 7, 19, 27, 32, 33, 41.)  Likewise, Terry Baker billed 0.2 hour for receiving a transcript and forwarding the document to Ms. Goettman.  (Doc. 70-4 at 7.)  Given the clerical nature of these tasks, the requested fee award will be reduced for the forwarding of emails and documents.  *See Schmidt*, 2018 WL 6593362, at *9.

The paralegals also repeatedly billed for communications with others working on the case, including telephonic conversations, electronic chats, texting, and emailing.  (*See generally* Doc. 70-5 at 7-43.)  For example, Ms. Tyler and Ms. Goettman each billed 0.2 hour on April 15, 2019, for emailing one another regarding completing calendaring in the firm's system.  (Doc. 70-5 at 32.)  Ms. Tyler regularly billed for emailing counsel reminders of upcoming deadlines and actions needed.  (*See, e.g.*, *id.* at 7, 9-11, 13, 16, 32, 43.)  Ms. Tyler also billed for communications with counsel "regarding who the case is assigned to;" a hearing location; and document and task status, such as changing the attorney assignment in the firm's system, filing the summons, and "calendaring the settlement conference."  (*See, e.g., id.* at 7, 14, 34-36, 41.)  Further, Ms. Cateldge billed 0.2 hour for each of the electronic chats in which she simply notified Ms. Tyler and Mr. Dupart of Plaintiffs' phone calls.  (*Id.* at 35-36, 39.)  Similarly, Ms. Goettman billed for chat and text messages that included date confirmation.  (*See, e.g.*, Doc. 70-5 at 17-18.)  In addition, Ms. Goettman billed 1.0 hour for communications with co-counsel, such as emails with Terry Baker related to the motion to reset the scheduling conference, his pro hac vice application, and forwarding documents on December 5, 2018.[4]  (*Id.* at 32.)

Due to the clerical nature of internal communications among those working on the action—as well as the significant number of entries related to the interoffice communication by the paralegals—

---

[4]  Notably, Mr. Baker also billed for the email exchange on December 5, 2018.  (Doc. 70-4 at 6.)  Thus, this time for Ms. Goettman is also duplicative in nature. *See In re Mullins*, 84 F.3d at 467; *Robinson*, 717 F. Supp. 2d at 1099.

the requested fee award should be reduced.  *See In re Mullins*, 84 F.3d at 467; *Gauchat-Hargis*, 2013 WL 4828594 at \*3; *Mogck v. Unum Life Ins. Co. of Am.*, 289 F.Supp.2d at 1194.  Accordingly, based upon the Court's review of the challenged billing records, 19.5 hours will be deducted from the lodestar calculation, which includes: 0.2 hour for Terry Baker, 11.7 hours for Lisa Tyler, 6.4 hours for Kayla Goettman, 0.6 hour for Shaina Cateldge, 0.2 hour for Kimberly Riley, and 0.4 hour for Gabriela Torres.

### g. Docket review

Entries to which Jayco objects include docket reviews by Lisa Tyler and Kayla Goettman. (Doc. 72-3 at 157, 162.)  Specifically, on October 31, 2018, Ms. Tyler billed 0.2 hour for reviewing the "court website to see if any tentative issued" prior to the hearing on the motion for change of venue, and noted she "didn't see anything."  (Doc. 70-5 at 36.)  Ms. Goettman also billed 0.2 hour to review the docket to determine whether any hearings were continued on April 13, 2020. (*Id.* at 21.)  Reviewing the docket is a clerical task, for which this Court has declined to award fees. *See, e.g., Moore v. Chase, Inc.*, 2016 U.S. Dist. LEXIS 88293, at \*12 (E.D. Cal. July 7, 2016).  Therefore, 0.4 hour will be deducted from the lodestar, including 0.2 hour for Lisa Tyler and 0.2 hour for Kayla Goettman.

### h. Scheduling

Jayco identifies and challenges 16 billing entries related to scheduling depositions, and the vehicle inspection.  (*See* Doc. 72-3 at 160-161; Doc. 72-3 at 126.)  In September 2019, Ms. Tyler billed 0.2 hour for contacting Plaintiffs regarding scheduling a vehicle inspection, while Ms. Torres billed 0.3 hour for contacting opposing counsel to confirm the vehicle inspection date.  (*Id.* at 128, 160; Doc. 70-5 at 28.)  In addition, Ms. Tyler billed at total of 2.4 hours between December 2019 and March 2020 for emails to Plaintiffs and opposing counsel related to scheduling Plaintiffs' deposition dates.  (*Id.* at 160-161; *see also* Doc. 70-5 at 22-25.)  Kimberly Riley also billed 0.4 hours related to confirming the deposition dates.  (Doc. 72-3 at 126; Doc. 70-5 at 26.)

Courts in the Ninth Circuit have repeatedly indicated that communication related to scheduling, even with a client, is a non-compensable clerical task.  *See, e.g., Soler v. County of San Diego*, 2021 WL 2515236, at \*10 (S.D. Cal. June 18, 2021) (identifying "time spent scheduling depositions… [as] clerical tasks non-compensable at any billing rate"); *Brown v. Cascade Mgmt., Inc.*, 2018 WL 4207097, at \*5, 14 (D. Or. Sept. 4, 2018) (emails with the client regarding "deposition scheduling" were deduced

from the fee award); *Schrum v. Burlington N. Santa Fe. Ry. Co.*, 2008 WL 2278137, at *12 (D. Az. May 29, 2018) (identifying "scheduling depositions" as "tasks which the court deems clerical or secretarial, and hence not compensable as part of the attorneys' fee award"). Likewise, the Court finds communications regarding scheduling a vehicle inspection are clerical in nature. Thus, given the clerical nature of the challenged entries related to scheduling, the lodestar will be reduced by 2.6 hours for Lisa Tyler, 0.4 hour for Kimberly Riley, and 0.3 hour for Gabriela Torres.

### i.      Communications with clients

"A lawyer has an ethical responsibility to communicate with a client." *Clendon v. Astrue*, 570. F.Supp. 2d 1164, 1667 (D. Az. 2008). Nevertheless, as one district court observed, "some client communications may be considered clerical or ministerial, such as merely informing the client that a document has been filed or what a hearing date is, [while] others that are more substantive are part of an attorney's duties, and therefore billable." *See James v. City & County of Honolulu*, 2014 WL 6908313, at *10 (D.Haw. Dec. 8, 2014) (internal quotation marks omitted).

Billing entries challenged by Jayco include non-clerical communications with Plaintiffs, related to questions or case issues. By way of example, on October 4, 2018, Ms. Tyler noted she received a voicemail from Plaintiffs "regarding whether or not he should move forward with fixing the damage to his unit, while at the dealership," and billed 0.6 hour for several communications related to the phone call. (Doc. 70-5 at 37.) The Court declines to deduct the challenged time for these ongoing communications with Plaintiffs. Similarly, the Court declines to find communications with Plaintiffs regarding discovery requests and verifications and addressing the settlement agreement were purely clerical in nature.

On the other hand, eight challenged entries indisputably include clerical communications. (*See* Doc. 72-3 at 127, 154, 151, 146-45.) Ms. Riley billed 0.4 hour related to forwarding a document for signature and the needed signature from Plaintiff. (Doc. 70-5 at 27.) In addition, emailing Plaintiff simply to "confirm[] receipt of documents" was a clerical task, and the 0.2 hour billed by Ms. Tyler will be deducted. (Doc. 70-5 at 42.) Similarly, Ms. Tyler billed 0.2 hour to email Plaintiffs a declaration for signature and 0.2 hour "confirming receipt" once Plaintiffs responded on January 24, 2020. (*Id.* at 23.) Ms. Tyler also billed 0.6 hour for communications with Plaintiffs regarding the

1   settlement conference date and appearances.  (*Id.* at 11-13)  Given the clerical nature of the tasks

2   related to scheduling, sending documents, and confirming receipt, the time billed should be omitted

3   from the lodestar. *See, e.g. Schmidt*, 2018 WL 6593362, at \*9 (emailing documents is a clerical task);

4   *Soler*, 2021 WL 2515236, at \*10 (identifying scheduling as clerical work).  Thus, based upon the

5   Court's review of the challenged billing records related to client communications, the lodestar

6   calculation will be reduced by 0.4 hour for Kimberly Riley and 1.2 hours for Lisa Tyler.

7                    *j.      Communications with opposing counsel*

8            Jayco challenges two entries in "Exhibit 8" and two  billing entries in "Exhibit 11" that

9   indicate emailed communication with opposing counsel, objecting the time should not be awarded as

10  "clerical" in nature.  (*See* Doc. 72 at 9-10; Doc. 72-3 at 128.)

11           Specifically, Kimberly Riley billed 0.4 hour for two emails attaching document production to

12  opposing counsel on October 13, 2019. (Doc. 70-5 at 27.)  Chad David billed 0.2 hour to send the

13  settlement agreement to Defendant's counsel on August 6, 2021.  (Doc. 72-3 at 166.)  Because

14  Plaintiffs and counsel had previously executed the agreement[5], it appears Mr. David was only required

15  to forward the document to opposing counsel.  As discussed above, mailing and forwarding documents

16  is deemed clerical work that is included in a firm's overhead costs.  *See Schmidt*, 2018 WL 6593362 at

17  \*9; *see also Chavez v. Stomp*, 2014 WL 12796784, at \*5 (N.M.D.C. Feb. 27, 2014) (delivering

18  documents to opposing counsel is a clerical task for which billing at an attorney's rate "is not

19  consistent with the obligation to exercise billing judgment").  In addition, Mr. David billed 0.2 hour

20  for communications related to "payment instructions" for opposing counsel.  (*Id.*)  However, emailing

21  payment instructions was clerical, work as it did not require any legal work or analysis of the

22  information.  Accordingly, 0.4 hour is deducted from the lodestar for Kimberley Riley and 0.4 hour is

23  deducted for Chad David.

24                   *k.      Communications with the Court and JAMS*

25           This Court and others declined to award fees for communicating with the Court—such emailing

26  or calling courtroom deputy—due to the clerical nature of the task.  *See, e.g., Miller v. Schmidt*, 2017

27

28           [5] Plaintiffs executed the settlement agreement on August 3, 2021; and Mr. David executed the agreement on
     August 5, 2021.  (Doc. 70-3 at 11.)

WL 633892, at *7 (E.D. Cal. Feb. 15, 2017) (agreeing with the party opposing the fee request that "communicating with the Court staff and court reports is purely clerical work" and excluding the time billed for communications with the courtroom deputies from a fee award); *Robinson v. Plourde,* 717 F. Supp. 2d 1092, 1099-1100 (D. Haw. 2010) ("communication with court staff, scheduling, and corresponding regarding deadlines, are clerical and not compensable [tasks]"); *Comcast of Illinois X v. Kwak,* 2010 WL 3781768, at *6 (D. Nev. Sept. 20, 2010) (declining to award fees for "ministerial tasks such as contacting court staff for scheduling reasons or noting due dates").

Ms. Tyler billed 0.2 hour on several occasions for contacting the court, both by email or phone call.  For example, on September 14, 2018, Ms. Tyler billed 0.2 hour for her "[e]mail to court regarding appearing telephonically" and another 0.2 hour for her "response to [the] clerk confirming Plaintiff can appear telephonically."  (Doc. 70-5 at 39.)  On November 21, 2018, Ms. Tyler billed 0.2 hour for emailing the court clerk regarding the status of an order, and 0.2 hour for leaving a voicemail regarding the status with a request for a return call.  (*Id.* at 34.)  She billed another 0.3 hour for contacting the court with status requests on November 26, 2018.  (*Id.*)  Ms. Tyler billed 0.2 hour for review of "court emails" on April 5, 2019.  (*Id.* at 32.)  Further, between June 30 and July 9, 2021, Ms. Tyler billed 1.9 for contacts regarding the conference, availability, inquiring whether only Kevin Scott could appear during the conference, confirming the date, and Zoom information.  (*Id.* at 10-13.)  Given the clerical nature of these communications, 3.2 hours shall be deducted from the lodestar for Ms. Tyler.  *See Miller*, 2017 WL 633892, at *7; *Robinson,* 717 F. Supp. 2d at 1099-1100.

In addition, Cindy Lewandowski billed 0.2 hour for forwarding an email from the Court that informed the parties there would be no jury trials in April 2021, and asking Mr. Baker to respond as soon as possible for calendaring purposes.  (Doc. 70-5 at 17.)  Given the communications concerned scheduling, 0.2 hour will be deducted from the fee award for Ms. Lewandowski.

Likewise, given the quasi-judicial nature of JAMS, and communications between Plaintiffs' counsel and the mediation organization—and actions related thereto—appear clerical.  Ms. Goettman billed 0.2 for her review of the "mediation confirmation from JAMS and confirm[ing] details on [the] calendar."  (Doc. 72-3 at 160; Doc. 70-5 at 26.)  She also billed 0.2 hour to "[r]eview the JAMS deposit request form" and "update [the] costs in the case file."  (*Id.* at 160; Doc. 70-5 at 25.)  Ms. Riley billed

0.2 hour for her receipt of an email from JAMS and saving it to the firm's system.  (*Id.* at 126; Doc. 70-5 at 27.)  There is nothing suggesting review of the mediation confirmation, confirming the date, or noting the cost in the firm's file requires the work of a paralegal.  Thus, the 0.4 hour billed by Ms. Goettman and the 0.2 hour billed by Ms. Riley related to communications from JAMS will also be omitted from the fee award.

> l.       *Document preparation and mailing*

On July 9, 2018, Ms. Goettman billed 0.3 hour to "[f]ill out Summons & attach proof of return receipt from the certified mailing; upload to the case files."  (Doc. 72-3 at 154; Doc. 70-5 at 42.)  It is unclear what Ms. Goettman filled out, as the Summons was issued by the Court on June 22, 2018.  (Doc. 2.)  Regardless, the Ninth Circuit identified "preparing and serving summons" as "purely clerical tasks." *Neil v. Comm'r of Soc. Sec.,* 495 F. App'x 845, 847 (9th Cir. 2012).  In addition, tasks related to mailing and drafting a certificate of service are clerical. *Acosta v. Martinez*, 2020 WL 1026890 at *10 (E.D. Cal. Mar. 2, 2020) ("drafting certificates of service… and sending documents" are clerical tasks).  Therefore, this time billed by Ms. Goetteman will be deducted.

Ms. Tyler billed 0.2 hour to complete a form declining consent to magistrate judge jurisdiction and e-file it on August 22, 2018. (Doc. 70-5 at 40; Doc. 72-3 at 155.)  The Court's consent form is a single-page, check-the-box document could not take more than moments to complete.  Previously, this Court noted that "completing and filing a consent to proceed before a magistrate judge form" is work that may be "completed by experienced support staff," but allowed minimal billed time, considering the documents should be review by a counsel. *Kirk*, 244 F.Supp.3d at 1084.  On the other hand, e-filing the form, as discussed above, is clerical work.  *Nadarajah*, 569 F.3d at 921.  Thus, the Court will deduct 0.1 for Ms. Tyler for the e-filing.  *See Calderon v. Astrue,* 2010 WL 4295583 at *5 (E.D. Cal. Oct. 22, 2010) (permitting only 0.1 hour for completion of the form regarding magistrate judge jurisdiction).  Likewise, the Court will deduct the challenged 0.2 hour billed by Ms. Tyler to draft the certificate of service for Plaintiff's initial disclosures and 0.2 hour for generating a mailing label due to the clerical nature of the work.  (Doc. 72-3 at 155, 157, Doc. 70-5 at 33, 39.)

Conversely, the preparation of representation agreements and declarations is not *purely* clerical work, as it is appropriate for paralegals and counsel to prepare such agreements.  The Court declines to

deduct the challenged billed time related to preparation of these documents.  Based upon the Court's review of the challenged entries related to document preparation, 0.8 hour will be deducted from the lodestar calculation, which includes 0.3 hour for Kayla Goettman and 0.5 hour for Lisa Tyler.

m.       *Discovery*

Jayco objects to the time billed by Gabriela Torres related to discovery and preparation of "discovery shells," including an entry for 6.0 hours, asserting it was clerical work.  (Doc. 72 at 8.)  However, the Court declines to assume the identified tasks were purely clerical in nature.  Indeed, the challenged billing entries indicates the work completed by Ms. Torres included preparing "rough responses" to the written discovery requests from Jayco, including responses interrogatories and requests for production of documents.  (*See* Doc. 70-5 at 30.)  Because this work is not purely clerical, the lodestar will not be reduced.  *See, e.g., Chloe SAS v. Sawabeh Information Servs. Co.*, 2015 WL 12763541, at *26 (C.D. Cal. June 22, 2015) (hours billed by professional staff for collecting and reviewing discovery was not clerical, and were "substantive case-related tasks"); *Triplett v. N.C. Dept' of Pub. Safety,* 2017 WL 3840422, at *11 (W.D.N.C. Aug. 31, 2017) (declining to reduce a fee award for billing entries challenged to which the defendant objected as clerical because"[t]he drafting and editing of discovery requests and answers… is far from a clerical task and is a task appropriate delegated to a paralegal").

n.       *Tasks related to admission*

Jayco objects to the time billed by Ms. Tyler for her "[r]eview [of] Indiana Northern district for admission requirements," which she then printed for Mr. Dupart.  (Doc. 72-3 at 157.)  In addition, Jayco objects to the time billed by Mr. Baker for contacting Ohio attorney services regarding a certificate of good standing as clerical.  (*Id.* at 158.)  Previously, the Ninth Circuit indicated tasks related to "attorney admission" are clerical in nature.  *See Nadarajah*, 569 F.3d at 921 (reducing the requested fee award for the time award billed by a paralegal related to counsel's admission).  Based upon the clerical nature of the tasks concerning Mr. Dupart's admission to the Northern Indiana District Court, the 0.2 hour billed by Lisa Tyler and 0.2 hour billed by Terry Baker will be deducted from the lodestar calculation.

*///*

23

o.       *Mixed entries with block-billed tasks*

As explained by one district court, "[b]lock billing, which bundles tasks in a block of time, makes it extremely difficult for a court to evaluate the reasonableness of the number of hours expended." *Aranda v. Astrue*, 2011 U.S. Dist. LEXIS 63667, at *13 (D. Ore. June 8, 2011); *see also Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) ("block billing makes it more difficult to determine how much time was spent on particular activities"). In addition, a court may reduce a fee award when "documentation of hours is inadequate." *Hensley*, 461 U.S. at 433.  Accordingly, the Ninth Circuit has explained that, where time is billed in "blocks," the Court may "simply reduce[] the fee to a reasonable amount." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000); *see also Welch*, 480 F.3d at 948 ("We do not quarrel with the district court's authority to reduce hours that are billed in block format.").

Although the Court addressed several block-billed entries above that included only clerical tasks, there were also many challenged entries that involved legal research.  As identified below, Ms. Goettman and Ms. Tyler billed for performing legal research—including reviewing local rules and the Federal Rules—which is not clerical work.  *See Nechitaylo v. Wedum Family Ltd. P'ship*, 2015 WL 8479627, at *2 (E.D. Cal. Dec. 10, 2015) (finding "tasks involving legal research" were not clerical); *Chloe SAS*, 2015 WL 12763541, at *26 (fees billed by staff who assisted counsel "performing legal research" were recoverable).  Thus, to the extent the billed records below involve legal research, such time is compensable.

| DATE | BILLER | TASK | TIME |
|------|--------|------|------|
| 6/28/18 | KG | Review FRCP 4 re service of the Summons and Complaint; the rule states that we can follow state rules regarding service. Print Docket No. 1-4 and give all to SJ in addition to Jayco's registered agent information for certified mailing to D today | 0.6 |
| 9/27/18 | LT | Review local rule re motion deadlines and saved to Merus. Calendared motion and deadlines. Uploaded and saved motion docs to file. Print hard copy for RD, and noted d/l to file oppo on docs. Also printed rules for him, and summary of calendar of events with upcoming deadlines, etc. Put on his chair for review. | 0.7 |
| 4/1/21 | LT | Review TB's email regarding dates for matter. Check file, and saw trial date and pre-trial needed to be calendared, with related deadlines. Email response to TB and updated him dates needed to be added. Review file for docs, and emails from the court, to figure out dates to be calendared, and for related deadlines to be saved…. | 1.5 |

| | | Review order #45. Review local rules. Updated notes, calendar and d/l sheet, and saved notes to file. | |
|---|---|---|---|
| 6/4/21 | LT | Review local forms for appearance/withdrawal for eastern, and there weren't any. Found Central, but that won't work. Kept trying to find forms. Found general one for appearance and drafted for CD review. Went ahead and revised a withdrawal on pleading, that way if CD wants to mess with language, he can. Uploaded/saved docs to file, and updated chat. | 0.6 |
| 6/21/21 | LT | Link court email and saved Doc#61 to file. Review order signed by court. Review local rule re settlement conference. Review doc #45. Review dept. rules. Updated notes, calendar, and d/l sheet. | 0.6 |

Where, as here, the billing records present time in blocks, the Court may "simply reduce[] the fee to a reasonable amount." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000); *see also Welch*, 480 F.3d at 948 ("We do not quarrel with the district court's authority to reduce hours that are billed in block format"). Because the firm billed in a minimum of 0.2 hour increments—as discussed further below—the Court will deduct 0.2 hour from each of the above entries to reflect the inclusion of clerical tasks, such as printing, uploading. and saving documents; file reviews and updates; calendaring deadlines; and internal communications about clerical matters. This results in a reduction of the lodestar by 0.2 hour for Ms. Goettman and 0.8 hour for Ms. Tyler.

### 4.    Vague entries and overbilling

Jayco asserts that it "identified a number of entries in … counsel's records that are vague and lack sufficient specificity about what was done to justify the time and fees billed." (Doc. 72 at 11.) As discussed above, counsel has a burden to document the hours expended, and do so in "in a manner that will enable a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437. The Court may reduce hours to offset the "poorly documented" billing. *Fischer v. SJN-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000); *see also Mendez v. County of San Bernardino*, 540 F.3d 1109 (9th Cir. 2008) (finding district courts have broad discretion to reduce the number of hours included in the fee award where the billing records are vague, insufficiently descriptive, or inflated).

This Court and others in the Ninth Circuit have reduced fee awards where the billing entries were too vague to conduct "a meaningful review" or determine whether the time expended was reasonable. *See, e.g., McCarthy v. R.J. Reynolds Tobacco Co.,* 2011 WL 4928623, at *4 (E.D. Cal. Oct. 17, 2011) (reducing time for a fee award where "most of the entries refer only generally to 'legal

research' and 'conversations with [co-counsel]' without identifying the subject of the research or

conversations"); *Nolan v. City of Los Angeles,* 2014 WL 12564127, at *7 (C.D. Cal. Feb. 10, 2014)

(criticizing "entries that merely indicate that an email was sent or that a phone call was made without

describing in any way the reason for or topic of the particular correspondence" and reducing the

lodestar); *Davis v. Prison Health Serv*., 2012 WL 4462520, at *11 (N.D. Cal. Sept. 25, 2012)

(concluding billing entries were "too vague to enable the Court to assess the reasonableness of the time

claimed" when there were "scores of time entries such as 'review e-mail from opposing counsel,'

'review e-mail chain,' and 'draft e-mail' without any further detail provided").

   Jayco contends the billing records the billing records of Plaintiffs' counsel also are vague,

warranting a reduction in fees.  (Doc. 72 at 10-12.)  Specifically, Jayco asserts:

> Plaintiff counsel's billing contains numerous entries that say "E-mail client", "E-mail opc", or "E-mail exchange with...", without providing any details as to the substance of the communication. There are also entries that are devoid of any information as to what tasks were specifically performed such as a description on 8/21/19 that is simply "Scott v. Jayco" for .5 hours. The vagueness of these and other similarly deficient billing entries makes it impossible for the Court to assess whether the time claimed by Plaintiffs' counsel was reasonably expended.

(*Id.* at 12.)  Jayco compiled 99 billing entries it asserts should be stricken as vague in "Exhibit 12,"

totaling 27.9 hours.  (*See id.*; *see also* Doc. 169-71.)  In addition, Jayco contends "there are numerous

examples of billing entries that typical would be billed at .1 even though 6 minutes is more than what

it would take to complete a task," such as calling Plaintiffs and leaving voice messages and

calendaring deadlines.  (*Id.* at 12.)  Thus, Jayco "requests a 75% reduction due to the considerable

vague nature of the excessive billing entries in Exhibit 12 where the lack of specificity severely

interferes."  (*Id.*)

   In response, Plaintiffs argue that "many of the entries are sufficiently specific" in Exhibit 12.

(Doc. 73 at 6.)  For example, Plaintiffs observe: "Billing entries such as "Email D" or "Email OPC"

are well known to mean email Defendant and email Opposing Counsel."  (*Id.*)  Plaintiffs contend: "All

correspondence with opposing counsel is recoverable billing. Further specificity of the entries is not

necessary when Defense counsel has records of the emails received that correspond to the billing

entries."  (*Id.*)  Plaintiffs also assert "any further specificity on the billing entries more than 'email

opc' or 'spoke with client' would lead to issues concerning attorney-client privilege and the attorney

work product doctrine." (*Id.*)  Finally, Plaintiffs observe that "defense counsel makes no arguments that any of the alleged vague billing entries did not in fact occur as they also have records of the communications that were billed for." (*Id.*)  Therefore, Plaintiffs "request[] that no billing entries be disallowed due to being vague." (*Id.*)

Significantly, Jayco's presentation of the challenged billing entries in Exhibit 12—pulling the entries out of the chronological order from the original billing records and reorganizing them into alphabetical order of the identified tasks—gives the appearance that the billing records are more vague than, in fact, they are.  Review of the challenged entries in the context of the original billing records provides clarity as to many of the topics of communications with Plaintiffs and opposing counsel.  For example, Jayco challenges three entries that state "Email D" on September 13, 2018 as vague.  (Doc. 72-3 at 169.)  However, the billing records clearly indicate Plaintiffs' counsel and Defendant's counsel were engaged in ongoing communications that day related to preparation of and revisions to the Joint Scheduling Report (*See* Doc. 70-5 at 39-40.)  Similarly, Jayco challenges 12 entries related to communications between July 13 and July 15, 2021, including calls, voice messages, and emails to Plaintiffs and opposing counsel. (Doc. 72-3 at 169-71.)  Other entries with these in the billing records show the challenged entries were a portion of ongoing communications regarding settlement, prior to the parties notifying the Court that the action settled on July 15, 2021.  (*See* Doc. 70-5 at 9-10; *see also* Doc. 64 [indicating the parties informed the Court on July 15 that a settlement was reached, and vacating the settlement conference for July 16].)  A simple review of the original billing records also easily reveals the topics of ongoing communications challenged in Exhibit 12 including, but not limited to: emails with opposing counsel regarding the motion to transfer venue, discussion regarding the parties' stipulation to transfer the action back to the Eastern District, preparation prior to a settlement conference, and email exchanges with Plaintiffs concerning availability.  (*E.g., compare* Doc. 72-3 at 169-171 *with* Doc. 70-4 at 7, Doc. 70-5 at 9, 13-14, 19-20.)  Consequently, the Court declines to find the billing records are poorly documented or too vague to evaluate.

On the other hand, the Court notes that counsel and the professional staff billed a minimum of 0.2 hour for each task. This is comparable to the quarter-hour billing repeatedly criticized by the courts, because it inflates the time billed on the matter. *See e.g., Welch v. Metro Life Ins. Co.,* 480 F.3d

942, 949 (9th Cir. 2007) (affirming a reduction after finding the billing practice inflated the time recorded); *Robinson v. Plourde,* 717 F. Supp. 2d 1092, 1100-01 (D. Haw. 2010) (applying a 20% reduction for billing with a minimum of 0.25 hour); *Prudential Ins. Co. v. Am. v. Remington,* 2014 WL 294989 at *4 (E.D. Cal. Jan. 24, 2014) (also applying a 20% reduction where counsel billed a minimum of 15 minutes and in 15-minute increments).

In *Welch*, the district court "imposed a 20 percent across-the-board reduction on [the] requested hours" because the law firm "billed in quarter-hour increments." *Welch*, 480 F.3d at 948. The court concluded the "practice of billing by the quarter-hour resulted in a request for excessive hours . . . because counsel billed a minimum of 15 minutes for numerous phone calls and e-mails that likely took a fraction of the time." *Id.* The Ninth Circuit also reviewed the time sheets and noted: "Our own review of the time sheet confirms that it is replete with quarter-hour or half-hour charges for the drafting of letters, telephone calls and intraoffice conferences." *Id.* Therefore, the Court affirmed the reduction for quarter-hour billing. *Id.*

The thorough review of counsel's billing records strongly suggests the 0.2 hour minimum resulted in overbilling. Counsel and professional staff billed 12 minutes on numerous occasions for voices messages, reviewing minute orders, more than 50 emails[6]. (*See e.g.,* Doc. 70-5 at 6; Doc. 70-5 at 8-9, 13-15, 20, 22.) Notably, Plaintiffs do not disavow a practice of billing a 0.2 hour minimum or otherwise address Jayco's arguments concerning how the practice results in overbilling in the reply. In *Remington*, this Court observe that "15-minute billing for reading the three-sentence Minute Order, which should have been read in 30 seconds or less time, obviously inflated the time spent performing that task, and causes concern that other unverifiable tasks likely took a fraction of the time billed to complete." *Remington*, 2014 WL 294989 at *4. Similarly, billing 12 minutes for noting a minute order to the file (*see, e.g.* Doc. 70-5 at 36) suggests the reported time was inflated significantly by the 0.2 hour billing minimum on other tasks such as reviewing emails, leaving a telephone message, and telephone conferences with Plaintiffs and co-counsel. *See id; Welch*, 480 F.3d at 948-49. Therefore, the remaining time reported by counsel is reduced by 15% for purposes of the lodestar calculation.

---

[6] This excludes intraoffice emails addressed above.

1

2          5.      Unsupported and "anticipated" time

3          Plaintiffs contend, "It is well established that Plaintiffs are entitled to fees for bringing in this

4   motion to enforce their right to attorney fees." (Doc. 71 at 14, citing *Serrano v. Unruh*, 32 Cal.3d 621,

5   637-639 (1982); *State v. Mayer*, 174 Cal.App.3d 1061, 1075 (1986).)  Therefore, Plaintiffs seek "an

6   additional $7,500 for bringing [the] Motion, reviewing Jayco's Opposition to Plaintiffs' Motion,

7   drafting Plaintiffs' Reply, preparing and attending any related hearing, preparing any needed filings to

8   satisfy the order, for time to wrap up the settlement and ultimately collect any amount awarded by this

    Court." (*Id.* at 6.)

9          Importantly, Plaintiffs failed to provide any evidence with the Reply related to the time

10  actually spent preparing the motion, reviewing the opposition, and drafting the brief.  In addition, the

11  motion was taken under submission without oral arguments.  (Doc. 74.)  The Court declines to

12  speculate as to the actual time spent by counsel in preparation of the instant motion and the reply, as it

13  is the fee applicant's burden to present evidence to support the fee request.  *See Hensley*, 461 U.S. at

14  424; *Welch*, 480 F.3d at 945-46.  Accordingly, the Court declines to bolster the lodestar with the

15  monetary amount requested.

16      **B.      Hourly rates**

17          The Supreme Court determined attorney fees are to be calculated with "the prevailing market

18  rates in the relevant community."  *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *see also PLCM*

19  *Group, Inc. v. Drexler*, 22 Cal.4th 1084, 1096 (2000) ("[t]he reasonable hourly rate is that prevailing

20  in the community for similar work").  The fee applicant has the burden to establish the rates are

21  reasonable within the community, and meets this burden by "produc[ing] satisfactory evidence—in

22  addition to counsel's own declarations—that the requested rates are in line with those prevailing in the

23  community for similar services by lawyers of reasonably comparable skill, experience and reputation."

24  *Blum*, 465 U.S. at 896 n.11.  For example, the Court may refer to "[a]ffidavits of the plaintiffs'

25  attorney and other attorneys regarding fees in the community" and rates paid in other cases. *United*

26  *Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

27          In general, the "relevant community" for purposes of determining the prevailing market rate is

28  the "forum in which the district court sits."  *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 979 (9th

Cir. 2008).  Thus, when a case is filed in this Court, the Eastern District of California "is the

appropriate forum to establish the lodestar hourly rate."  *See Jadwin v. County of Kern*, 767 F.Supp.2d

1069, 1129 (E.D. Cal. 2011); *see also Gordillo v. Ford Motor Co.*, 2014 WL 2801243 (E.D. Cal. June

19, 2014).  The court may apply "rates from outside the forum… 'if local counsel was unavailable,

either because they are unwilling or unable to perform because they lack the degree of experience,

expertise, or specialization required to handle properly the case.'"  *Barjon v. Dalton*, 132 F.3d 496 (9th

Cir. 1997) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992)).

### 1.     Rates for counsel

Although the Law Offices of Jon Jacobs is currently located in Temecula, California—which is

within the Central District of California—the law office was headquartered near Sacramento when the

complaint was filed.  (*See* Doc. 1 at 1; Doc. 73 at 4.)  Thus, the Court finds, for purposes of this motion,

that counsel were "local" to the Eastern District, such that the Court need not determine whether rates

outside the form are applicable.  Rather, the Court must evaluate whether the hourly rates requested are

reasonable for the Eastern District of California.[7]

The attorneys on this action seek hourly rates ranging from $350 to $650.  (Doc. 71 at 7-8.)

Specifically, Mr. Jacobs seeks the hourly rate of $495 for the 2.2 hours of work he completed in 2018

and the rate of $550 for his 0.6 hour of work in 2021.  (*See* Doc. 71 at 8; Doc. 70-4 at 7, 9, 43.)  Mr.

Baker reports his "hourly rate started at $525, and increased to $650 per hour…[i]n March of 2020."

(Doc. 70-4 at 3, Baker Decl. ¶ 12.)  In addition, Plaintiffs seek $495 per hour for work completed by

Rene Dupart, who was admitted to the California State Bar in 2013, and Elana Midda, who was

admitted to the bar in December 2004.[8]  (Doc. 70-5 at 4, Jacobs Decl. ¶ 19.)  In addition, they seek

$175 per hour for work completed by Chad David while he was a law clerk, and $350 per hour for

work completed after his admission to the Bar in November 2019.  (Doc. 70-3 at 2, David Decl. ¶¶ 7-

---

[7] With the Eastern District, the Sacramento Division and Fresno Division award comparable rates. *See Fitzgerald v. Law Office of Curtis O. Barnes*, 2013 WL 1627740, n.5 (E.D. Cal. Apr. 15, 2013) (observing that "[c]ases from this Court's Sacramento Division largely mirror the rate determinations from the Fresno Division").

[8] Plaintiff did not provide any information regarding when Elana Midda began practicing law. However, the Court "may take judicial notice of the State Bar of California's website regarding attorneys' dates of admission to the Bar." *Davis v. Hollins Law*, 25 F.Supp.3d 1292, 1298 n. 5 (2014). Thus, the Court takes judicial notice of the admission date of Elana Midda as December 2004, as represented on the website of the State Bar of California. *See id.*; Fed. R. Evid. 201(b).

8; Doc. 71 at 7-8.)

Jayco objects to the hourly rates sought by Plaintiffs' counsel "are unreasonable compared to what small litigation firms bill and should be adjusted accordingly." (Doc. 72 at 4.) According to Jayco, "there is no indication in any of the moving papers that the rates being sought here by Plaintiffs' counsel are their usual and customary rates and that their clients routinely pay these rates or that any court has awarded them these rates." (*Id.*, emphasis omitted.) Jayco observes: "Mr. Jacob's Declaration and Mr. Baker's Declaration both lack any sort of information to identify which cases, if any, they have been awarded the requested hourly rates or the outcome of court rulings on prior fee motions." (*Id.* at 5.) Further, Jayco notes that in *Flores v. FCA US LLC*, "this Court granted in part an attorneys' fees motion and reduced a fee request," finding reasonable hourly rates for "in the Eastern District of California's Fresno Division … generally rang[e] from $250 to $400 for attorneys." (*Id.* at 5-6, citing *Flores*, 2019 U.S. Dist. LEXIS 203497 (E.D. Cal. Nov. 19, 2019).)

In reply, Plaintiffs' contend "the *Flores* case is readily distinguishable to the case at hand both factually and in regards to the basis of the attorney fees sought." (Doc. 73 at 4.) Plaintiffs observe: "Flores involved a Dodge RAM passenger vehicle that was purchased in California and contained a known defect," and "[f]rom all records available, it appears *Flores* was a 'simple' lemon law case." (*Id.*, citing *Flores*, 2019 U.S. Dist. LEXIS 203597, at *4.) In addition, Plaintiffs contend, "[i]n August of 2020, the Eastern District of California found that Mr. Jacobs' and Mr. Baker's hourly rate for lodestar purposes to be $505 per hour." (*Id.* at 3, citing *Seebach v. BMW of N. Am., LLC*, 2020 U.S. Dist. LEXIS 152330 at *9, 2020 WL 4923664 at *3 (E.D. Cal. Aug. 21, 2020).) Plaintiffs assert, "In *Seebach*, the Court also confirmed the rates of attorney Ryan Gomez of $300 and $350 per hour who has the same level of experience as attorney Chad David at the time." (*Id.* at 3-4.)

Previously, the Court observed: "A recent comprehensive analysis of attorney's fees in this district found the following hourly rates to be reasonable: $450 for partners with at least 20 years of experience; $400 for partners with between 10 and 20 years of experience; and $250 for associates with between four and 10 years of experience." *Price Simms Holdings v. Candle3*, 2021 WL 1884995, at *2 (E.D. Cal. May 11, 2021), citing *Firstsource Sols. USA, LLC v. Tulare Reg'l Med. Ctr.*, 2019 WL 2725336, at *8 (E.D. Cal. June 28, 2019); *but see Acosta v. Perez*, 2021 WL 3910543, at *12 (E.D. Cal.

Sept. 1, 2021) ("District Judge Anthony W. Ishii … surveyed prevailing rates in this district and found that reasonable hourly rates … are between $175 and $380, depending on the attorney's experience and expertise, with $300 being the upper range for attorneys with 10 years or less experience").  However, as Plaintiffs assert, this Court recently awarded higher hourly rates to counsel in *Seebach*.

In *Seebach*, the plaintiffs were also represented by Jon Jacobs and Terry Baker in a lemon law action filed originally in December 2017.  *See id.*, 2020 WL 4923664 at *2-3.  The parties reached a settlement, but "could not agree on a reasonable attorneys' fee amount" and filed a motion for fees. *Id.* at *1.  Counsel requested hourly "rates ranging from $350 to $650 per hour for work performed on the case," including $650 per hour for Mr. Baker and $550 per hour for Mr. Jacobs, $400 for an attorney "with roughly one year of experience," and $300 to $350 per hour for an attorney "with roughly 4 years of experience."  *Id.* at *3.  The Court noted opined the "requested rates [were] not reasonable for lodestar purposes."  *Id.*  Given the experience of Mr. Jacobs and Mr. Baker—which each had "roughly 20 years of experience"—the Court reduced their hourly rate to $505, noting it was taking into account state court judgments cited by Mr. Baker in which he was awarded $475 to $505 per hour in similar actions. *Id.*  In addition, the Court reduced the hourly rate of Mr. Walker to $200 to reflect that he had "one year and two months of experience litigating."  *Id.*

Based upon the Court's prior surveys of hourly rates awarded in this district, Plaintiffs fail to demonstrate the reasonableness of the rates requested by counsel, and the hourly rates must be adjusted to rates that are reasonable in this forum to calculate the lodestar.  *See Seebach,* 2020 WL 4923664, at *3.  John Jacobs seeks the rate of $495 per hour for his work completed in 2018, and $550 for his work completed in 2021.  (*See* Doc. 71 at 8.)  As previously noted, Mr. Jacobs has practiced law for more than 20 years.  This Court found the reasonable rate for attorneys in the Eastern Division was "$450 for partners with at least 20 years of experience." *See Price Simms Holdings*, 2021 WL 1884995 at *2, citing *Firstsource Sols. USA, LLC*, 2019 WL 2725336 at *8 (E.D. Cal. June 28, 2019); *see also Eagle Sys. & Servs. v. Int'l Assoc. of Machinists,* 2017 WL 1213373 at *3 (E.D. Cal. Mar. 31, 2017) (finding the rate of $450 was acceptable in this district "for partners with 20 to 35 years of experience").  Therefore, the hourly rate for work completed by Mr. Jacobs in 2018 will be reduced to the rate of $450.  In addition, his hourly rate for work completed in 2021 will be reduced to $505, to

align with the hourly rate previously approved as reasonable for Mr. Jacobs by this Court.  *See Seebach*, 2020 WL 4923664, at *3.  Likewise, the hourly rates requested by Mr. Baker will be reduced to $505 to mirror the fees awarded in *Seebach* and the state court judgments previously reviewed by the Court.  *See id.*

The requested hourly rate of $495 for Elana Midda and Rene Dupart must also be reduced to be reasonable for this forum.  The rate for Ms. Midda, who was admitted to practice in 2004 and had approximately 14 years of experience when she worked on the action, will be reduced to $350 per hour.  *See In re Taco Bell Wage & Hour Actions,* 222 F. Supp. 3d 813, 839 (E.D. Cal. 2016) (noting courts in the Eastern District have awarded attorneys "with less than fifteen years of experience … $250.00 to $350.00 per hour"); *see also Estrada v. iYogi, Inc.,* 2016 WL 310279, at *6 (E.D. Cal. Jan. 26, 2016) (approving $400 requested rate for attorneys with as much as 19 years of experience).  Similarly, the hourly rate will be reduced to $250 for Mr. Dupart, who had been admitted to the bar for approximately five years when he worked on the action in 2018.  *See Perkins v. City of Modesto*, 2020 WL 4547325, at *2 (E.D. Cal. Aug. 5, 2020) (finding "$250 per hour to be a reasonable rate" for an attorney who "had been licensed for fewer than seven years" when the fees were incurred); *Lowery v. Account Outsourcing Group, LLC*, 2018 WL 3769430 at *2 (E.D. Cal. Aug. 9, 2018) (finding the requested rate of $250 was appropriate for a lawyer who had been "a consumer protection attorney" for three years); *Mike Murphy's Enters., v. Fineline Indus,* 2018 WL 1871412, at *3 (E.D. Cal. Apr. 19, 2018) (case awarding the hourly rate of $250 for an attorney who had been practicing for seven years); *see also Seebach*, 2020 WL 4923664, at *3 (noting that for an attorney with 4 years of experience, $300 was "within the reasonable range for the Sacramento market," though it is unclear what year(s) these fees were incurred).

Finally, the hourly rates for Chad David, who was admitted to the bar in November 2019 exceed those awarded in this forum.  When Mr. David began working on the action, he was a law clerk with the firm.  Although the Court approved the requested rate of $175 in *Seebach*, the Court noted this rate was "for a *certified* law clerk."  *Seebach*, 2020 WL 4923664 at *3 (emphasis added).  Here, there is no evidence that Mr. David completed the process to become a certified law clerk with the California bar.  Thus, the Court finds the hourly rate should be reduced to $125 for his work prior to admission to the

bar.  *Compare Lowery v. Account Outsourcing Group, LLC*, 2018 WL 3769430 at \*2 (E.D. Cal. Aug. 9, 2018) (awarding the hourly rate of $125 to a law clerk) *with Seebach*, 2020 WL 4923664 at \*3 (awarding the rate of $175 for a certified law clerk).  Further, as of the filing of the reply to this motion, Mr. David had been practicing law for only two years.  The requested hourly rate for Mr. David once he was admitted to the bar is reduced to $200, to be within the reasonable range for the Eastern District. *See Seebach*, 2020  WL 4923664, at \*3 (reducing the requested hourly rate of $400 to $200 for an attorney who had less than two years of practicing law).

>    2.    Paralegals

Plaintiffs seek an hourly rate of $150 for each of the paralegals on the action.  (Doc. 71 at 7-8.) Mr. Baker reports that he has "charged $150 per hour for paralegal time for at least seven years" and "received that amount in nearly every settlement with every major vehicle, motor home, RV, and boat manufacturer."  (Doc. 70-5 at 3, Jacobs Decl. ¶ 12.)  In addition, Mr. Baker stated he "obtained that rate in a fee motion in Sacramento County."  (*Id.*, citing *Brown v. FCA US LLC*, Case No. 34-2016-00202429.)  Jayco objects to the rate and requests it be reduced to $115.  (Doc. 72 at 6.)

Notably, Plaintiffs' counsel report—without identifying any supporting evidence or documentation—"the contingency fee agreement signed by the Plaintiffs specifically provides for the billing of paralegal time at $150.00 an hour."  (Doc. 71 at 13.)  However, Mr. Scott reports that the "Letter of Engagement" he signed with the Law Offices of Jon Jacobs made it "clear" that Plaintiff "would not pay a penny out of [his] pocket for their legal services or costs."  (Doc. 71-1 at 1-2, ¶ 5.) Thus, it is not clear whether Plaintiffs agreed they would pay $150 per hour for paralegals' work on the action, or if they simply acknowledged this was the hourly rate typically billed by the firm. Regardless, any agreement between Plaintiffs and counsel is not dispositive of the issue of whether fees requested are reasonable.  Instead, the Court has an obligation to determine whether a proposed hourly rate is reasonable for the forum. *See Gates*, 987 F.2d 1390; *Moreno v*, 534 F.3d at 1111.

Paralegal rates within the Eastern District range between $75 to approximately $150.00, depending on experience.  *Schmidt v. City of Modesto,* 2018 WL 6593362, at \*6 (E.D. Cal. Dec. 14, 2018) ("the reasonable rate of compensation for a paralegal would be between $75.00 to $150.00 per hour depending on experience"); *see also Phillips 66 Co. v. Cal. Pride*, 2017 WL 2875736, at \*15

(E.D. Cal. July 6, 2017) (identifying the same range of hourly rates); *Trujillo v. Singh*, 2017 WL 1831941 at *3 (E.D. Cal. May 8, 2017) (finding requested hourly rates of $95-115 were reasonable within the Eastern District). Although the requested rate is within the range approved by this district, Plaintiffs' counsel fails to provide any information regarding the levels of education or experience for the paralegals.  The Court is unable to assume, as counsel would have it, that the hourly rate awarded in prior actions was to the same paralegals, or to individuals with the same level of experience. Without such information, Plaintiffs fail to show an hourly rate at the highest end of the spectrum is appropriate. *See, e.g,, Freshko Produce Servs. v. ILA Prods*, 2021 WL 4033176, at *4 (E.D. Cal. Sept. 2, 2021) (approving $150 per hour as reasonable "for a paralegal with more than 30 years of experience" for purposes of calculating the lodestar).

When counsel has failed to provide information related to the experience of paralegals, the Court has reduced the requested fee award to the lower end of the hourly rate range.  *See, e.g., Englert v. City of Merced*, 2020 WL 2215749, at *13 (E.D. Cal. May 7, 2020) (rejecting the requested rate of $125 to $150 per hour for the paralegals and reducing them to $75 when the plaintiffs "provided no information on the experience of the paralegals"); *Freshko Produce Servs. v. Write on Mktg.*, 2019 WL 3798491 at *3 (E.D. Cal. Aug. 13, 2019) (finding the proposed hourly rate of $150 was not reasonable because counsel "fail[ed] to identify the education and experience of [the] paralegal to justify the upper rate of $150," and adjusting the hourly rate to $100); *Mora v. Cal W. Ag Servs., Inc.*, 2019 WL 2084725, at *9 (E.D. Cal. May 13, 2019) (applying adjusted rate for paralegals of $100 per hour where counsel failed to identify the experience of the paralegals).  Because counsel has not provided any information regarding the education and experience of *any* of the paralegals who worked on this action, the hourly rate for each paralegal will be reduced to $100.  *See Freshko Produce*, 2019 WL 3798491 at *3; *Mora,* 2019 WL 2084725, at *9.

Based upon the Court's prior surveys of the attorney fees awarded in the Eastern District and the Court's own knowledge, these hourly rates are reasonable for the tasks completed by counsel and the professional staff in this action. *See Roach,* 2017 WL 5070264 at *9; *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (concluding "the district court did not abuse its discretion either by relying, in part, on its own knowledge and experience" to determine reasonable hourly rates).

## C.    Lodestar Calculation

The lodestar method calculates attorney fees by "by multiplying the number of hours reasonably expended by counsel on the particular matter times a reasonable hourly rate." *Florida*, 915 F.2d at 545 n. 3 (citing *Hensley*, 461 U.S. at 433); *see also Laffitte v. Robert Half Int'l*, 1 Cal. 5th 480, 489 (2016). With the time and rate adjustments set forth above, the lodestar in this action is **$67,634.35**:

| LEGAL PROFESSSIONAL | HOURS | RATE | LODESTAR |
|---|---|---|---|
| Jon Jacobs (2018) | 1.87 | $450 | $841.50 |
| Jon Jacobs (2021) | 0.17 | $505 | $85.85 |
| Terry Baker | 109.10 | $505 | $55,095.50 |
| Chad David (as a law clerk) | 0.34 | $125 | $42.50 |
| Chad David (after admission) | 21.34 | $200 | $4,268.00 |
| Rene Dupart | 16.75 | $250 | $4,187.50 |
| Jon Feely | 0 | N/A | N/A |
| Elana Midda | 1.87 | $350 | $654.50 |
| Nicolas Dillavou | 0 | N/A | N/A |
| Lisa Tyler | 7.65 | $100 | $765.00 |
| Gabriela Torres | 9.18 | $100 | $918.00 |
| Kimberly Riley | 1.81 | $100 | $181.00 |
| Kayla Goettman | 3.91 | $100 | $391.00 |
| Cindy Lewandowski | 0 | N/A | N/A |
| Shaina Cateldge | 2.04 | $100 | $204.00 |
|  |  |  |  |
| **TOTAL** |  |  | **$67,634.35** |

## D.    Application of a multiplier

Plaintiffs request that the lodestar figure be enhanced by a multiplier of 1.5.  (Doc. 71 at 9.) Once a court has calculated the lodestar, "it may increase or decrease that amount by applying a positive or negative 'multiplier' to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Laffitte,* 1 Cal.5th at 504 (citation omitted); *see also Ketchum v. Moses*, 24 Cal.4th 1122, 1132 (2001) (indicating the court may adjust the fee award considering "the following factors: (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award").  The party seeking a lodestar enhancement bears a "heavy" burden to overcome the "strong presumption" that the lodestar is reasonable. *Stewart v. Gates*, 987 F.2d 1450, 1453 (9th Cir. 1993).

Plaintiffs contend, "This case calls for a multiplier to enhance the lodestar fee amount." (Doc. 71 at 9.) According to Plaintiffs, "Lemon Law litigation is a specialized field that involves complex interplay between state and federal consumer statutes and the Uniform Commercial Code as interpreted by state and federal courts." (*Id.*) In addition, Plaintiffs assert this case was "especially complex" with novel issues raised "at multiple times during the lawsuit." (*Id.* at 10.) Plaintiffs observe:

> [T]he facts of this case involve a motor home purchased in Iowa by residents of California with a warranty provision that litigation be prosecuted in Indiana. As evidenced by this Court's ruling on Plaintiff's Motion for Order Establishing the Controlling Law, complex issues of law arose with little case precedent to guide Plaintiffs' claims. Specifically, here, this case was transferred to the Northern District of Indiana and subsequently transferred back to this venue upon discovery of Defendants utilizing improper evidence to support their transfer of venue. Attorney Terry Baker was required to be admitted *pro hac vice* to prosecute this case in Indiana.

(*Id.*) As a result, Plaintiffs contend they "had to overcome procedural hurdles prior to litigating this case on the merits." (*Id.*)

Further, Plaintiffs argue the skill counsel displayed also supports application of a multiplier. (Doc. 71 at 10.) They contend counsel's "overall skill … is evidenced by the claim's survival through litigation and the outcome achieved in Plaintiffs." (*Id.*) Plaintiffs report:

> In over 20 years of practicing exclusively in the field of Lemon Law, Jon Jacobs has handled approximately 2,000 Lemon Law cases. Last year alone, the Law Offices of Jon Jacobs handled over 300 Lemon Law cases. Jacobs Decl. ¶ 4.
> Similarly, Terry Baker has over 20 years of litigation and trial experience working for multiple law firms specializing in consumer warranty protection. He alone has successfully taken over 25 cases to trial and has handled over 100 Lemon Law cases during the pendency of this current action. Baker Decl.

(*Id.*) Plaintiffs assert "they spent more than 200 hours on this matter, with an additional 25 hours anticipated to close out this case," and that "[u]ntil this case is fully resolved, Plaintiffs' counsel is unable to allow another case to take its' (sic) place." (*Id.* at 11.)

Finally, Plaintiffs argue the contingency fee contract between Plaintiffs and counsel supports the application of a multiplier. (Doc. 71 at 11-12.) Plaintiffs assert, "counsel prosecuted this case on a contingency fee basis and advanced *all* of the costs of litigation." (*Id.* at 11, emphasis in original.) According to Plaintiffs, the application of a fee multiplier also "encourage[s] competent counsel to protect consumers on a contingency fee basis." (*Id.* at 12, emphasis omitted.) Plaintiffs assert, "[w]ithout full compensation for successful cases, experienced and competent counsel will be deterred

from accepting consumer cases." (*Id.*)

Jayco opposes the request for a multiplier, asserting that "Plaintiff's counsel lists the factors that support such a determination, but fails to demonstrate why such an entitlement is justified on the instant facts." (Doc. 72 at 13.)  Jayco contends that while "Plaintiffs' counsel repeatedly refers to the excellent result achieved …, Plaintiffs settled their claims for a diminished value payment of $42,500.00 – not a repurchase or replacement of their motor home." (*Id.*)  According to Jayco, it "always argued that Plaintiffs' damages must only be calculated as a 'diminished value' recovery," while Plaintiffs "refused to acknowledge that Song-Beverly repurchase remedies were unavailable until the eve of trial." (*Id.*) In addition, Jayco contends "Plaintiffs' Counsel were clearly not precluded from taking on any work as a consequence of their work in this case," as a review of the hours billed reveals that "Counsel billed less than 10 hours per month in this matter for 27 of the 40 months of the litigation between February 2018 and August 2021." (*Id.* at 14.)  Jayco observes that "[t]he most hours billed for any month was 21 hours in February 2020." (*Id.*)  Thus, Jayco contends "Counsel could have accepted other cases, assuming such cases were available." (*Id.*)

Significantly, it does not appear counsel faced truly novel and complex issues of law in this action, contrary to their assertions.  Indeed, the only substantive motions filed with the Court related to a motion to change venue and motion to resolve the parties' dispute related to the controlling law. (*See* Docs. 11, 49.)  Despite the representations of counsel, the level of skill and experience of Mr. Jacobs and Mr. Baker were not particularly reflected in the prosecution of this action.  Counsel was not required to face significant factual disputes or dispositive motions in this action, such as a motion to dismiss, motion to strike, or motion for summary judgment.  Indeed, of the 230.7 hours originally billed by the Law Offices of Jon Jacobs, approximately 40% of the hours were billed by paralegals and 10% by an attorney who was licensed to practice during the pendency of this action.  (*See* Doc. 71 at 7-8.)  Thus, the Court finds the issues presented and skill required do not support the application of a multiplier.  *See, e.g., Steel v. GMC*, 912 F. Supp. 724, 746 (N.J. Dist. 1995) ("the issues in lemon law litigation are not complex and do not require a significant amount of legal analysis or novel pleading"); *Ketchum*, 24 Cal. 4th at 1138 (explaining that "[a] more difficult legal question typically requires more attorney hours").

Furthermore, there is no evidence that the nature of the litigation precluded other employment by counsel.  To the contrary, Plaintiffs' counsel expended a total of fewer than 275 hours of work on this action over the course of three years.  Indeed, Plaintiffs' counsel admits that "[l]ast year alone, the Law Offices of Jon Jacobs handled over 300 Lemon Law cases" and Mr. Baker "handled over 100 [other] Lemon Law cases during the pendency of this current action."  (Doc. 71 at 10.)  Finally, the Court finds the contingent nature of the fee award is outweighed by the other factors, particularly in this action where the disputed facts and issues were minimal.  *See Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157, 1217 (2008) (enhancement for contingent risk is appropriate where "[t]he claims and defenses . . . raised a significant number of complex legal issues of first impression, and class counsel took a substantial risk that it would not prevail on these issues and thus would not recover a full fee").  Accordingly, the Court finds the lodestar amount of **$67,634.35** is reasonable for the work completed and results achieved, and declines to award a multiplier.

### E.    Costs to be Awarded

Plaintiff requests costs and expenses in the amount of $1,509.13, as reflected in their "Bill of Costs."  (Doc. 71 at 6; Doc. 70-5 at 106-08.)  In general, an award of costs in federal district court is governed by Federal Rule of Civil Procedure 54(d) and not applicable state law.  *See Champion Produce, Inc. v. Ruby Robinson Co., Inc.*, 342 F.3d 1016, 1022 (9th Cir. 2003) (citing *In re Merrill Lynch Relocation Mgmt., Inc.*, 812 F.2d 1116, 1120 n. 2 (9th Cir. 1987)).  This is because "federal courts sitting in diversity apply state substantive law and federal procedural law." *Feldman v. Allstate Ins. Co*., 322 F.3d 660, 666 (9th Cir. 2003) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)).  Thus, federal procedural law governs a request for an award of costs.

Rule 54 of the Federal Rules of Civil Procedure provides that costs "should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d)(1).  This "creates a presumption in favor of awarding costs to the prevailing party, but the district court may refuse to award costs within its discretion." *Champion Produce*, 342 F.3d at 1022. "[A] district court need not give affirmative reasons for awarding costs; instead, it need only find that the reasons for denying costs are not sufficiently persuasive to overcome the presumption in favor of an award." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir. 2003).  For example, costs may be declined in light of "a losing party's limited financial resources" or

1    where there has been "misconduct by the prevailing party."  *Champion Produce*, 342 F.3d at 1022.

2           The Supreme Court explained that 28 U.S.C. § 1920 "defines the term 'costs' as used in Rule

3    54(d)."  *Crawford Fitting Co. v. J.T. Gibbons, Inc*., 482 U.S. 437, 441 (1987).  Costs that may be taxed

4    under 28 U.S.C. § 1920 include:

5           (1)  Fees of the clerk and marshal;
            (2)  Fees for printed or electronically recorded transcripts necessarily obtained for
6           use in the case;
            (3)  Fees and disbursements for printing and witnesses;
7           (4)  Fees for exemplification and the costs of making copies of any materials where
            the copies are necessarily obtained for use in the case;
8           (5)  Docket fees under section 1923 of this title;
            (6)  Compensation of court appointed experts, compensation of interpreters, and
9           salaries, fees, expenses, and costs of special interpretation services under section
            1828 of this title.

10

11   Section 1920 imposes "rigid controls on cost-shifting in federal courts," and "federal courts are bound

12   by the limitations set out in."  *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 444-45 (1987).

13   Generally, the court may not award costs under Rule 54(d) not authorized by statute or court rule.

14   *Arlington Cent. School Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 301 (2006). Thus, "costs almost

15   always amount to less than the successful litigant's total expenses in connection with a lawsuit."

16   *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012) (citation omitted).

17                          1.      Filing fee

18          Section 1920 specifically provides that a prevailing party may recover costs for fees to the

19   court clerk. 28 U.S.C. § 1920(1).  *See also Carr v. Tadin, Inc.*, 51 F.Supp.3d 970, 985 (S.D. Cal. 2014)

20   ("the filing fee is recoverable as a fee of the clerk"). Therefore, Plaintiffs are entitled to recover the

21   $400 filing fee.

22                          2.      Mediation fees

23          Plaintiffs seeks $987.50 for "[m]ediation fees paid to JAMS."  (Doc. 70-5 at 108.)  However,

24   "nothing in 28 U.S.C. § 1920 provides for the costs of a mediator*."  Sea Coast Foods, Inc. v. Lu-Mar*

25   *Lobster & Shrimp, Inc.* 260 F.3d 1054, 1061 (9th Cir. 2001); *see also Cook Children's Med. Ctr. v.*

26   *New England PPO Plan of Gen. Consol. Mgmt., Inc.,* 491 F.3d 266, 277 (5th Cir. 2007) (mediation

27   fees are not taxable costs because Section 1920 does not expressly permit their recovery). Plaintiffs are

28   therefore not entitled to recover mediation fees pursuant to Section 1920.

<u>3.</u>      Certificate of good standing

Finally, Plaintiffs seek $121.63 for obtaining a certificate of good standing from the State Bar of California.  (Doc. 70-5 at 108.)  However, courts have determined costs related to a *pro hac vice* application are not recoverable under Section 1920.  *See Kalitta Air L.L.C. v. Central Texas Airborne System, Inc.,* 741 F.3d 955 (9th Cir. 2013) (finding Section 1920 does not provide for recovery of costs expended on *pro hac vice* applications); *see also Eagle Ins. Co. v. Johnson*, 982 F. Supp. 1456, 1459 (M.D. Ala. 1997), *aff'd*, 162 F.3d 98 (11th Cir. 1998) (finding no statute authorizes compensation for certificate of good standing or *pro hac vice* filing fees).

## IV.     Conclusion and Order

Based upon the foregoing, the Court **ORDERS**:

1.      Plaintiff's motion for fees is **GRANTED** in the modified amount of $**67,634.35**; and

2.      Plaintiff's motion for costs is **GRANTED** in the amount of $**400.00**.

IT IS SO ORDERED.

Dated:   __**December 18, 2021**__            _____ **/s/ Jennifer L. Thurston**
                                                     CHIEF UNITED STATES MAGISTRATE JUDGE

41